TERRANCE DORAN v. THE BOARD OF EDUCATION OF WESTERN BOONE COUNTY COMMUNITY SCHOOLS, THORNTOWN, INDIANA, ET AL.

[No. 1271A266. Filed June 5, 1972. Rehearing denied August 10, 1972 with Opinion. Transfer denied February 21, 1973.]

*Richard J. Darko, Bingham, Summers, Welsh & Spilman,* of Indianapolis, for appellant.

*Scifres, Hollingsworth & Martin,* of Lebanon, *Isaac D. Gregg,* of Thorntown, for appellees.

LOWDERMILK, J.—Plaintiff-appellant was a non-tenure, duly licensed teacher of English and Latin in the Western Boone County Community Schools, Thorntown, Indiana, for the school year of 1968-1969. He also assumed the additional

duties of yearbook sponsor, Latin Club sponsor, and senior class sponsor.

On December 11, 1968, plaintiff-appellant was suspended from his teaching duties at Granville Wells School by the defendant, James P. Fritch, Superintendent of Schools, on the grounds of insubordination.

On December 23, 1968, plaintiff-appellant requested of Mr. Isaac C. Gregg, attorney for the defendant Board of Education, that a hearing be held, as was specified in his contract of employment, and also requested a statement of the charges against him. Attorney Gregg forwarded him by letter on December 28, 1968, a statement of the charges against him, together with notification that defendant-appellee Board of Education had set January 16, 1969, as the date to consider cancellation of his contract.

Professor Julius Getman of the Indiana University Law School at Bloomington requested permission of William Shubert, President of the defendant Board of Education, to appear as counsel for the plaintiff-appellant and requested a statement of the charges against plaintiff-appellant.

The public hearing was had on January 13, 1969. [Professor Getman had a prior commitment for January 16, 1969, and the date of the hearing was changed to January 13, 1969.] Plaintiff-appellant was represented by Professor Getman and the dismissal of plaintiff-appellant was prosecuted before the Board by James Fritch, Superintendent of the school corporation, who was, in addition, represented by the school board's attorney, Isaac C. Gregg.

Plaintiff-appellant was charged with six specific acts of insubordination, which are paraphrased as follows:

1. On December 11, 1968, plaintiff-appellant was requested by the principal's secretary to proceed with arrangements for the senior class commencement exercises and he informed the secretary, Mrs. Betty Smith, that he would not perform these acts.

2, 3 and 4. are that on December 3, 1968, plaintiff-appellant willfully allowed students under his supervision to violate school rules by smoking on school property and also willfully allowed said students to violate school rules by permitting the students to use the teachers' lounge, an off-limits area to students, and failure to report students' infractions to the principal's office as required by the rules of the school.

5. Failure of plaintiff-appellant to maintain proper classroom decorum in that he allowed students to roam about the classroom and willfully allowed students to sit upon desks, against the rules of the school for the proper conduct of students while in class.

6. On being permitted to return to school after his suspension to pick up personal possessions, he discussed his being "fired" with students and caused confusion.

A hearing was had before the Board of Education as an administrative board, after which the Board's attorney and School Superintendent Fritch met with the Board of Education in closed session where the case was discussed and a finding made that the plaintiff-appellant should be discharged as of December 11, 1968.

Thereafter, on February 4, 1969, plaintiff-appellant brought his action in the Boone Circuit Court in two Paragraphs, charging, among other things, that his termination as a teacher by the Board was arbitrary and capricious and an abuse of discretion and unsupported by substantial evidence, and citing many other allegations of capriciousness. The complaint prayed for back pay and damages for injury to his personal standing and reputation.

The cause was venued to and tried in the Montgomery Circuit Court and at the close of plaintiff-appellant's evidence, under Rule TR. 41(B), on defendants-appellees' motion, the court entered a judgment for the defendants-appellees, that plaintiff take nothing by his action and for costs.

Plaintiff-appellant timely filed his motion to correct errors which the court overruled four days later.

Specification 2 of said motion to correct errors reads as follows, to-wit:

"2. The action of the Court in granting the defendants' motion for dismissal under Trial Rule 41 (B), at the conclusion of the plaintiff's evidence, and in making an adjudication upon the merits against the plaintiff, is contrary to law, considering all the evidence and reasonable inferences therefrom in favor of the plaintiff to be true, in that the plaintiff introduced substantial evidence of probative value to sustain his allegations that he was not provided with a hearing meeting minimal requirements of procedure due process of law as required by the Fourteenth Amendment to the Constitution of the United States. Plaintiff introduced substantial evidence of probative value, considered under the standard of Trial Rule 41 (B), that the defendants who conducted the hearing were biased and prejudiced against the plaintiff before such hearing, that such defendants relied in making their decision upon evidence not introduced at the hearing which evidence plaintiff was not made aware of and was not permitted to cross-examine, and such defendants conferred with the defendant Lee French [sic—James P. Fritch] and the attorney who represented Mr. French [sic—Fritch] in prosecuting the dismissal at the hearing and did not invite plaintiff or his representatives to participate in such conference held after the hearing, all of which is more fully stated in plaintiff's brief in support of this motion."

In reviewing the evidence, we have determined that the members of the school board constitute the Board of Education of the Western Boone County Community Schools, and heard the charges presented against the plaintiff-appellant as an administrative body. As such, the Board of Education is charged with the same legal procedure of accepting or rejecting evidence as a state wide administrative body. *Tippecanoe Valley School Corporation* v. *Leachman* (1970), 147 Ind. App. 443, 261 N. E. 2d 880; *Guido v. City of Marion* (1972), 151 Ind. App. 435, 280 N. E. 2d 81.

Said defendants are charged with having brought the charges against the plaintiff-appellant by the Superintendent of the school corporation and having relied upon evidence which was not introduced at the hearing in making their decision to terminate plaintiff-appellant's employment. Secondly, defendant members of the school board permitted Mr. Isaac Gregg to function in the dual capacity of legal adviser to the Superintendent in prosecuting the charges against the plaintiff-appellant and as legal adviser to the Board which had established itself as the hearing tribunal.

The evidence disclosed at the trial before the Board of Education that the defendant, Superintendent Fritch, testified that *prior to the public hearing* held before the School Board, each of the Board members had approached him, seeking information concerning each of the charges brought against the plaintiff-appellant, and information concerning plaintiff's activities as a teacher. Defendant Fritch further testified he provided such information, which included conversations between Mr. Valentine and himself some time before the School Board hearing.

The evidence discloses that Mr. Valentine was a former principal of said school and although he was within the territorial limits of the State of Indiana during the time of the hearing, he was not brought before the administrative board, nor was his deposition taken; however, his affidavit pertaining to plaintiff-appellant's activities as a teacher was read to the Board over the objection of plaintiff-appellant's counsel as hearsay and not being admissible and the fact it was hearsay and that he was not present to be cross-examined.

William J. Shubert, president of the Board of Education, testified he met with defendant Fritch repeatedly before the dismissal hearing and discussed with Fritch the charges which had been made against the plaintiff-appellant and the evidence which would support those charges. Mr. Shubert further testified that prior to the dismissal hearing he discussed plaintiff-appellant's activities with Mr. Sam Valentine, the principal

of the school in which plaintiff taught. Mr. Shubert testified that Mr. Valentine gave him information as to the plaintiff's activities, including the charges which had been made against the plaintiff and that he accepted Mr. Valentine's statements as being true. *Mr. Shubert further testified that he relied, at least in part, on the information which Mr. Valentine had given him, in making his decision to dismiss the plaintiff as a teacher in the defendant school corporation.*

Plaintiff-appellant further complains that the School Superintendent and his attorney met with the Board in closed executive session following the hearing without permitting plaintiff-appellant to be present. He further complains that at the hearing the school board attorney acted as both prosecutor of the plaintiff-appellant and as legal adviser to the board, which had constituted itself as the hearing tribunal.

To the last objection argued by the plaintiff-appellant we can give no relief, as due process was not denied plaintiff-appellant by the presence of the School Superintendent and the attorney. In the case of *Guido* v. *City of Marion, supra,* Judge Hoffman of this court, in writing pertaining to the discharge of a policeman for failure to do his duty, quoted:

"In discussing *Wong Yang Sung* and other important cases on this question, 2 Am. Jur. 2d, Administrative Law, § 412, at 423, states:

" 'However, due process is not necessarily denied by the fact that the hearing is before the same authority which has preferred the charges upon which the hearing is had, or by the fact that the trier of the fact has personal knowledge of the matter in issue or has expressed an opinion that the conduct in question is illegal. The combination in the same person of the functions of investigation or advocacy and the function of deciding is a recognized evil.'·

\* \* \*

"Similarly, several leading cases from various jurisdictions were considered and discussed in 16A C. J. S. Constitutional Law § 628, at 862-863, in the following paragraph:

" 'In order to comply with the requirements of due process, the hearing granted by an administrative body must be a full and a fair one, before an impartial officer, board, or body free of bias, hostility, and prejudgment; but mere irregularity or error with respect to a hearing cannot be made the basis of a claim of denial of due process, and a person cannot complain of a defect in an administrative hearing as a denial of constitutional rights as long as he obtains a full hearing before a court on the question in issue. The fact that the administrative agency is both the accuser and judge does not deprive the accused of due process of law, * * *.' "

Judge Hoffman, further, in quoting from *City of Evansville* v. *Nelson* (1964), 245 Ind. 430, at 438, 199 N. E. 2d 703, at 707-708 quoted our Supreme Court as saying:

" 'The proceedings as held by the Commission, are governed by the general rules of procedure before administrative bodies. This allows for less formality than in civil proceedings before a court in both the charge and conduct of the hearing held pursuant thereto.' "

Judge Hoffman further discussed the distinction between a criminal trial and a hearing before an administrative body:

"* * * The purpose of a criminal trial is to *prove the guilt* of the accused person (s). To the contrary, the purpose of a hearing before the Board of Public Works and Safety is not to criminally prosecute. The purpose is only to inquire into the circumstances and ascertain the facts concerning the charges lodged. As stated by our Supreme Court in *State ex rel. Felthoff* v. *Richards, supra,* the hearing must be 'dominated solely by a desire to determine the fitness of the person under charges.'
. . .

"Therefore the presence of the Assistant City Attorney at the hearing was not a denial of due process. Guido's due process right in the hearing before the Board of Public Works and Safety entitled him to a fair hearing, with adequate notice and the right to present and examine witnesses. As stated, the Assistant City Attorney should not have been present at the hearing to persuade the Board as to Guido's innocence or guilt for that was not an issue for determination. The only issue for determination was to

ascertain the facts concerning the fitness of Guido to serve as a police officer."

The court, further, in *Guido* said that it had not been directed to any evidence whatever that Guido had been denied a fair hearing, but on the contrary, the court was convinced from examination of the record that the Board was impartial and objective in receiving and weighing the evidence.

"* * * The Assistant City Attorney, whether viewed as counsel for the Police Chief as prescribed by statute, or as an attorney for the Board, did no more than take an active part in the elicitation of the facts. He did not participate in the Board's decision, he did not make any rulings on the evidence, and he did not make any statements to persuade or dissuade the Board. Therefore, the vote cast by the City Attorney for the dismissal of Guido was valid."

A search of the record in the case at bar discloses that the Board's attorney did not make any recommendations after the hearing of the evidence and in the closed meeting, but he did participate in the general discussion, as did Superintendent Fritch. Mr. Shubert was asked the following question, to which he gave the following answer in the trial court:

"Q. Did Mr. Fritch make recommendations at that executive session?
"A. Only as to how we were to proceed as to relieving Mr. Doran of his contract."

It is apparent, however, that the Board considered evidence not brought out at the hearing in deciding to terminate plaintiff-appellant's employment. In our opinion, such a procedure is necessarily unfair and, therefore, not a hearing within the terms and conditions of plaintiff's contract, and is so prejudicial to the plaintiff-appellant that he did not receive a fair hearing.

The matter of an administrative board's responsibility in conducting a hearing is discussed in *Monon Railroad* v. *Public Service Commission* (1960), 241 Ind. 142, 170 N. E. 2d 441.

This was an action wherein the original proceeding was before the Public Service Commission of Indiana to require the railroad to furnish crossing protection at two railroad crossings. From an adverse order of the Commission, the railroad appealed.

The Indiana Appellate Court refused to disturb the ruling of the Public Service Commission despite the facts of extra hearing evidence, stating that no prejudice had actually been shown, and in discussing the matter of the members of the Commission viewing the premises to see if warnings had been placed at the crossing after the hearing, stated, in 161 N. E. 2d 626, 629:

> "It is the generally accepted rule that an order of the Commission will be reversed only for prejudicial error, and any alleged error in the proceedings which does not in fact injure the complaining party will not justify disturbing the Commission's order. I. L. E. Administrative Law and Procedure § 80; 18 A. L. R. 2d Annotation § 10, p. 579. In the case of *United States et al.* v. *Pierce Auto Freight Lines, Inc., et al.* (1946), 327 U.S. 515, 66 S. Ct. 687, 695, 90 L. Ed. 821 the court has this to say:
>
> "'* * * the mere fact that the determining body has looked beyond the record proper does not invalidate its action unless substantial prejudice is shown to result.' (Our emphasis.)
>
> "The appellant draws the inference that by the use of the words 'and caused special investigations to be made' the Public Service Commission did in fact base its order on information and evidence outside the hearing, and that the rights of the appellant were substantially prejudiced thereby. This inference is drawn by the appellant despite the evident fact there is no showing that such was the case. This Court could just as well infer that if anything was done outside the hearing that the Commission merely inspected the crossing to determine whether or not a flasher had been installed in the interim. Whenever two or more inferences can be drawn from language used by the Commission in any order issued by the Commission, it is the duty of this Court to draw the inference which would sustain the validity of the order."

The Supreme Court deemed in determining the issues there were two questions raised, as follows:

"1. May the Public Service Commission, after the termination of a hearing on a petition to require a railroad company to establish a flagman at a county highway crossing, pursuant to Acts 1915, ch. 49, §§ 1 to 4, being §§ 55-2016 to 55-2019 Burns' 1951 Replacement, inclusive, without notice to the parties, conduct its own investigation, without making a record thereof, and then enter an order requiring appellant railroad to establish a flagman?

"2. Whether or not the Public Service Commission failed to make a specific finding of fact that the appellant railroad company is unable to remove an obstruction to view, but found such facts by implication, and thereupon entered an order requiring the railroad company to establish a flagman at a county highway crossing?"

Our Supreme Court said that it had previously decided question number one above cited in the negative in the case of *Pub. Serv. Comm. et al. etc.* v. *Ind. Bell Tel. Co.* (1956), 235 Ind. 1, 27, 130 N. E. 2d 467, 479. There the court said:

" 'In a matter such as the action at bar the Commission cannot act on its own independent information, but must base its findings upon evidence presented in the case, with an opportunity to cross-examine witnesses, to inspect documents or exhibits, and to offer evidence in explanation or rebuttal and nothing can be treated as evidence which has not been introduced as such.' "

The court further said that in the proceedings to require the installation of additional warnings at hazardous grade crossings such proceedings must be conducted in conformity with the law governing petitions, hearings and proceedings before the Commission in regard to rates and service of public utilities, citing authority therefor. On this the court said:

"We see no reason why the same rules of procedure should not be followed in proceedings concerning the installation of additional means of warning at public crossings where the view is obstructed, pursuant to Acts 1915, ch. 49, *supra.*"

The court said, further, that the record disclosed that the hearing was held, and the special investigations were made within thirty days prior to the finding, and further said:

" 'In a matter such as the action at bar the Commission cannot act on its own independent information, but must base its findings upon evidence presented in the case, with an opportunity to cross-examine witnesses, to inspect documents or exhibits, and to offer evidence in explanation or rebuttal and nothing can be treated as evidence which has not been introduced as such.' " [Citations omitted.]

The court went ahead to say that it had repeatedly held that there must be specific findings of ultimate facts to sustain the order and not general findings.

There were no special findings of fact in the case at bar, but no question has been raised on this and, therefore, it is not necessary for us to go into that problem.

Our Supreme Court reversed the Appellate Court in the *Monon Railroad* case for the reason that the Public Service Commission acted upon its own independent investigation and did not base the findings upon evidence presented in the case, with an opportunity to cross-examine witnesses and offer evidence in explanation or rebuttal, and that nothing can be treated as evidence which has not been introduced as such. And further, as reason for reversal, the court assigned the failure to file special findings of fact, as required by the statute.

The case at bar is most similar to *Monon Railroad* v. *Pub. Serv. Comm., supra,* in that the Board of Education made a part of its own investigation, relied upon for its ruling, and did not have witnesses available so they could be cross-examined by the plaintiff-appellant.

Plaintiff-appellant relies on the case of *Tippecanoe Valley School Corporation* v. *Leachman, supra.* This case is an appeal from a judgment in favor of a teacher for damages for breaching the teacher's contract.

Judge White of this court quoted from *Christmann* v. *Coleman* (1927), 117 Ohio St. 1, 157 N. E. 482, 484, wherein the general rule was stated that where power has been conferred upon an administrative board to remove another officer, a teacher, or appointee, for cause, and the procedure is provided for such removal, *and the procedure has been followed,* the finding of such officer or board dismissing another officer, a teacher, or appointee, is final and conclusive and not reviewable by the courts, either in a direct proceeding to reverse or by collateral attack, *except where such administrative officer or board has acted in bad faith, corruptly, fraudulently, or has grossly abused its discretion.*

In the case at bar we are constrained to hold that the conduct and action of the School Board and its personal actions and investigations made prior to the Board's hearing as an administrative agency was a gross abuse of discretion and, therefore, violated plaintiff-appellant's rights under the Fourteenth Amendment to the United States Constitution, and is contrary to law. It is our opinion that the proper procedure would have been for the Board of Education to have gathered information for the hearing through its attorney, Mr. Gregg, and its Superintendent, Mr. Fritch, between the time notice was given to plaintiff-appellant Doran of his suspension and the date for the hearing. The evidence could then have been properly presented to the Board of Education on the hearing date and there would have been no question that they had prejudged the case.

In *Jeffersonville Redevelopment Commission* v. *City of Jeffersonville* (1967), 248 Ind. 468; 229 N. E. 2d 825, our Supreme Court held that a public hearing conducted in connection with proceedings initiated by the Department of Development under a Redevelopment Act to condemn certain property was not conducted in a manner that was free and meaningful, and would be reversed by the courts, where parties were not permitted to examine or question evidence relied upon by the hearing body.

The Supreme Court there stated:

"An administrative tribunal cannot rely on its own information for support of its findings, an order of tribunal must be based on evidence produced in the hearing at which an opportunity is given to all interested parties to offer evidence and cross-examine witnesses."

The court also stated:

"An administrative hearing, particularly where the proceedings are judicial or quasi-judicial, must be fair, or, as frequently stated, full and fair, fair and adequate, or fair and open. There must be adequate notice of issues, and the parties must be given an opportunity to be present, to submit evidence, and to cross-examine witnesses."

Our Supreme Court repeated the language of the *Jeffersonville Redevelopment* case in *Derloshon* v. *City of Fort Wayne* (1968), 250 Ind. 163, 234 N. E. 2d 269. See, also, *Greene* v. *McElroy* (1959), 360 U.S. 474.

It is our considered opinion that the trial court erred in dismissing this cause of action under Rule TR. 41(B) and the cause is hereby reversed, and remanded to the trial court for a new trial. The other questions raised in appellant's motion to correct errors need not be and are not discussed or decided herein for the reason we have heretofore reversed on one of said specifications. *Selner* v. *Fromm* (1969), 145 Ind. App. 378, 251 N. E. 2d 127.

Reversed and remanded.

Robertson, P.J. and Lybrook, J., concur.

NOTE.—Reported in 283 N. E. 2d 385.

## ON PETITION FOR REHEARING

LOWDERMILK, J.—On June 22, 1972, appellee filed petition for rehearing to which appellant filed a brief in opposition thereto on June 27th, 1972. This was followed by the filing of a petition to dismiss the petition for rehearing, supported by a brief thereon, filed June 27th, 1972.

Thereafter, on July 5, 1972, appellees filed their brief in opposition to petition to dismiss petition for rehearing.

The Indiana School Boards Association and the Indiana Association of School Superintendents, on July 6, 1972, filed petition for leave to file brief as amici curiae in response to the opinion of this court entered on June 5, 1972.

Plaintiff-appellant filed objection to petition of the Indiana School Boards Association and Indiana Association of School Superintendents for leave to file brief as amici curiae and appellant's petition to strike said petition.

On July 10, 1972, the court overruled appellant's petition to strike said petition and granted appellant ten days from July 10th to file an answer brief to the brief of amici curiae under Rule AP 8.3 (F).

And afterward, on the 9th day of July, 1972, plaintiff-appellant filed answer brief to the amici curiae brief heretofore filed.

The court, having considered the matters and petitions above enumerated and being duly and fully advised in the premises, overrules appellant's petition to dismiss the petition for rehearing and further, having considered the brief of the Indiana School Board Association and Indiana Association of School Superintendents as amici curiae in response to the opinion of this court entered June 5, 1972, and having further considered the answer brief of plaintiff-appellant to the amici curiae brief and now, being duly and fully advised in the premises, denies the petition for rehearing with the following opinion:

Firstly, the able counsel for the Indiana School Boards Association and Indiana Association of School Superintendents as amici curiae state in their brief that they:

". . . do not themselves question the result reached by the Court in its decision. The decision is questioned in a Petition for Rehearing filed by the School Board on June 22, 1972.

"Amici curiae recognize that the decision of a school board in such a hearing should be based solely on the evidence presented at the hearing, and that its decision cannot rely on information secured outside of the hearing itself. This basic requirement, we understand, is the main thrust of the Court's Opinion in the instant case. . . ."

Amici curiae contends that this court's language places a new and novel restraint on the investigatory power of school boards in Indiana and their administrative staff, and would seem to create a requirement of judicial insulation from the facts in every case, that is not necessary or feasible, and is not now required by the Fourteenth Amendment of the Constitution of the United States.

They further set out that part of the court's opinion which stated as follows:

"In reviewing the evidence, we have determined that the members of the school board constitute the Board of Education of the Western Boone County Community Schools, and heard the charges presented against the plaintiff-appellant as an administrative body. As such, the Board of Education is charged with the same legal procedure of accepting or rejecting evidence as a state wide administrative body. *Tippecanoe Valley School Corporation* v. *Leachman* (1970), 147 Ind. App. 443, 261 N. E. 2d 880; *Guido* v. *City of Marion* (1972), 151 Ind. App. 435, 280 N. E. 2d 81."

And further, they state that it *seems* to amici curiae that the language *might* require all school boards in Indiana "as a state wide administrative body" to comply with the provisions of the Indiana Administrative Adjudication and Court Review Act (IC 1971, 4-22-1; Burns § 63-3001, *et seq.*), which governs all agencies of the State of Indiana not expressly excluded from the Act.

This court is of the opinion that the statement of this court above quoted and questioned by amici curiae cannot be construed, and it certainly was not intended, to go beyond the scope of the *Leachman* and *Guido* cases, *supra*, which

indicate that each case must be judged on the particular facts of that case. Further, we did not intend that school board hearings comply with formalities of the Indiana Administrative Adjudication and Court Review Act, *supra*.

Amici curiae raises a second question, which pertains to the fact that all members of the school board approached Superintendent Fritch prior to the hearing to determine what the evidence would be and what the case was all about. Anything he told them would be hearsay.

If a court or board does consider hearsay evidence it is entirely possible that a reviewing court, not knowing that the same has been done, may unwittingly err in its opinion on the appeal. In other words, a court or board's considering hearsay, or curbstone evidence, in arriving at its opinion can cause the greatest amount of injustice to parties litigant in the trial before a court or board in the first instance, or may cause an equally unjust ruling on appeal.

This court fully recognizes that this same burden and obligation applies to members of a school board in the respective cities and counties of Indiana and this burden having been placed upon them they must accept it and handle it in the same manner as above set out.

For us to say that the school board members should not discuss these cases or the conduct of the teachers would be for us to make a foolhardy statement. It is natural for them to do so and they will.

Mr. Shubert, president of the Board of Education, had made his own private investigation, had talked with other teachers and other persons, and as was said in the opinion:

". . . Mr. Shubert further testified that he relied, at least in part, on the information which Mr. Valentine had given him, in making his decision to dismiss the plaintiff as a teacher in the defendant school corporation."

Amici curiae further states:

"The fact that the School Board sought information from the Superintendent of Schools and that the Superintendent

of Schools made an independent investigation of the facts and circumstances surrounding the charges made against the plaintiff-appellant, and furnished this information to the School Board, including an affidavit from the former principal, Mr. Valentine, does not violate the constitutional rights of the plaintiff-appellant. It is not what is done *before* the hearing, but *at* the hearing that is constitutionally significant."

Mr. Valentine, the former principal of the school in which plaintiff-appellant taught, was available as a witness in the State of Indiana, where the defendants-appellees could have secured his deposition, as stated in the opinion. Mr. Valentine did not testify by deposition nor in person and, therefore, plaintiff-appellant had no opportunity to cross-examine him pertaining to the charges against the plaintiff-appellant, Mr. Doran; any evidence considered by the board hearing the charges which was given to the board by Mr. Valentine, through his informing others who, in turn, gave the information to the board, was hearsay, was improper and should not have been permitted into the record and should not have been considered by the board.

We did not mean in our original opinion that the members of the school board discussing the case with members of the public and with school teachers caused the disqualification of the school board to hear the case and neither did we intend to convey that their hearing the case under such circumstances was a violation of the due process requirements of the Fourteenth Amendment to the United States Constitution.

Plaintiff-appellant's constitutional rights were violated, as set forth in our opinion, in the failure or have former principal Valentine present and give appellant Doran the right of cross-examination. We are of the further opinion that there was grave error in Mr. Shubert's relying, in part, on evidence he had heard outside of the hearing in arriving at his decision.

Amici curiae's third specification is as follows:

"On page 13 of the Court's Opinion, it is stated:
" 'In the case at bar we are constrained to hold that the conduct and action of the School Board and its personal

actions and investigations made prior to the Board's hearing as an administrative agency was a gross abuse of discretion and, therefore, violated plaintiff-appellant's rights under the Fourteenth Amendment to the United States Constitution, and is contrary to law. It is our opinion that the proper procedure would have been for the Board of Education to have gathered information for the hearing through its attorney, Mr. Gregg, and its Superintendent, Mr. Fritch, between the time notice was given to plaintiff-appellant Doran of his suspension and the date for the hearing. The evidence could then have been properly presented to the Board of Education on the hearing date and there would have been no question that they had prejudged the case.'

"This language would appear to forbid a school board from conducting any investigation or making any inquiries or even, perhaps, from receiving complaints concerning the facts and circumstances of any alleged misconduct of any of its teachers, prior to the hearing, or, at least, at any time after notice of hearing was given the teacher. This restriction would presumably also prevent the Board from conferring with the Superintendent of Schools or other school personnel or school patrons or even examining school records concerning the teacher, prior to the hearing."

In our opinion, we have heretofore in this opinion denying rehearing fully discussed the question presented by amici curiae.

Of course, the school board is not precluded from making an investigation and, in fact, it is their obligation and duty to do so, or have it done. However, it must be done either by the school board or a duly authorized employee in conformity with the law and *any evidence which the members of the school board gather and know about prior to the hearing must not be relied upon by them or considered by them in arriving at their decision. They can and must rely only on the evidence presented at the hearing where the teacher charged is entitled to and shall have the right to cross-examine the witnesses presented at the hearing,* together with the further right to introduce to the board evidence in his own behalf

which shall be considered by the board in arriving at its decision.

Robertson, P.J. and Lybrook, J., concur.

NOTE.—Reported in 285 N. E. 2d 825.