Dorothy N. WHITNEY, Appellant (Plaintiff Below),

v.

BOARD OF SCHOOL TRUSTEES OF the DeKALB COUNTY EASTERN COMMUNITY SCHOOL DISTRICT, Appellee (Defendant Below).

No. 3–380A84.

Court of Appeals of Indiana, Third District.

Feb. 25, 1981.

Richard J. Darko, Bingham, Summers, Welsh & Spilman, Indianapolis, Frederick R. Tourkow, Tourkow, Danehy, Crell, Hood & Rosenblatt, Fort Wayne, for appellant.

H. Charles Winans, Garrett, for appellee.

STATON, Judge.

Dorothy N. Whitney appeals the trial court's refusal to mandate the payment of damages caused by the allegedly wrongful cancellation of her employment contract by the school board of the DeKalb Eastern School Corporation. Whitney challenges several findings of fact and conclusions of law made by the trial court. We consolidate the alleged errors into the following issues:

(1) May Whitney seek damages in an action to mandate reinstatement under IC 1976, 20-6.1-4-12(c) (Burns Code Ed., 1980 Supp.), after voluntarily waiving any right to reinstatement?

(2) Did the trial court erroneously conclude that the school board complied with the procedural requirements of the Teacher Tenure Act?

We affirm as to Issue 1 and reverse as to Issue 2.

On June 20, 1977, the school board cancelled Whitney's employment contract for the 1977–78 school year. The school board stated that worsening economic conditions necessitated a reduction in the number of teaching positions in the school corporation, and Whitney's duties as an elementary school music teacher would be assumed by a teacher with greater seniority. On December 29, 1977, Whitney, a tenure teacher, filed a complaint against the school board under IC 1976, 20–6.1–4–12(c) (Burns Code Ed., 1980 Supp.), of the Teacher Tenure Act which provides that a tenure teacher whose employment contract has been wrongfully cancelled may

"bring an action in the nature of mandate as provided by law against proper officers of the school corporation for an order requiring them to reinstate the teacher and restore him to full rights as a permanent . . . teacher."

In her complaint, Whitney alleged that the school board violated the procedural requirements of the Teacher Tenure Act. Whitney requested that the trial court order the school board to reinstate her and to award back pay from the date of discharge.

On October 5, 1979, the trial court found against Whitney on two alternative grounds: (1) damages were not recoverable in an action to mandate reinstatement after Whitney voluntarily waived any right to reinstatement, and (2) the school board complied with the procedural requirements of the Teacher Tenure Act in cancelling her employment contract.

## I.

### Mandate

Whitney contends that the trial court erred in holding that back pay could not be recovered in an action to mandate reinstatement after Whitney waived any right to reinstatement. The trial court found that Whitney had accepted another teaching position within the school corporation in August of 1978. The trial court determined that Whitney's acceptance of a similar teaching position constituted reinstatement under the Teacher Tenure Act. Because reinstatement had been effected, the trial court concluded that any further action for mandate would not lie. The trial court's refusal to address the merits of Whitney's claim for back pay was predicated upon its statutory interpretation of IC 20–6.1–4–12(c). It interpreted the statute as requiring the issuance of a mandate ordering reinstatement before back pay could be awarded.

In her appellate brief, Whitney concedes that reinstatement is no longer in issue. Nevertheless, Whitney contends that reinstatement is not the exclusive remedy provided by IC 20–6.1–4–12(c), and that the trial court erred in refusing to address the merits of her claim for back pay under the statute.

The language of IC 20–6.1–4–12(c) requires an action for reinstatement of a tenure teacher to proceed "in the nature of mandate as provided by law." Under the rules of statutory construction, IC 20–6.1–4–12(c) must be construed *in pari materia* with the general laws relating to mandate, which are found at IC 1976, 34–1–58–1 *et seq.* (Burns Code Ed.). As a referential statute, IC 20–6.1–4–12(c) incorporates the body of law that has evolved under the mandate statutes. A statute that refers to the law which generally governs a specified subject, and not to any particular statute or part of a statute, incorporates the existing law on that subject at the date of the enactment of the referential statute and any subsequent law on that subject. *Town of Newburgh v. House* (1922), 191 Ind. 609, 613, 134 N.E. 292, 293; *Quality Clothes Shop v. Keeney* (1914), 57 Ind.App. 500, 504, 106 N.E. 541, 543.

The Indiana Supreme Court has construed IC 1976, 34–1–58–4 (Burns Code Ed.), of the mandate statutes as authorizing the recovery of damages in a mandate action. *Indiana Alcoholic Beverage Commission v. State ex rel. Harmon* (1978), 269 Ind. 48, 379 N.E.2d 140. The Court delineated the scope of recoverable damages as follows:

"[W]e believe it reasonable to conclude that the Legislature intended to permit the successful plaintiff to recover damages if he is required to make proof on issues of fact in order to obtain a judgment compelling a defendant officer or body to comply with the law. We do not believe that the Legislature intended, by abolishing writs of mandate, to increase or decrease damages recoverable in mandate actions. So conceived, it is the subjection of the plaintiff to the rigors, vexation, and expense of trial on issues of fact, upon which the right to an order compelling performance depends, which is the injury for which damages have been and should remain recoverable. Accordingly, successful plaintiffs under our statute are entitled to recover damages for all injuries flowing as a natural and probable consequence of the subjection to such trials. . . ."

269 Ind. at 54, 379 N.E.2d at 144. From this passage, it is apparent that the recovery of damages in a mandate action is predicated on the contemporaneous issuance of a mandate which grants the relief sought by the plaintiff. The use of the word "successful" indicates that the Court intended that the merits of the mandate action be adjudicated in the plaintiff's favor before damages may be awarded. The Court specifically stated that damages are recoverable if the plaintiff "is required to make proof on issues of fact in order to obtain a judgment compelling a defendant officer or body to comply with the law." 269 Ind. at 54, 379 N.E.2d at 144. Voluntary compliance with the relief requested would relieve the plaintiff of the burden of proving issues of fact in order to obtain a judgment. Thus, a plaintiff in a mandate action must vindicate a claim of right and obtain a judgment ordering the defendant to comply with the law before the trial court may consider awarding damages to the plaintiff.

■ In the present case, the trial court did not issue a mandate because the school board complied with Whitney's request for reinstatement before the trial court ruled

on her complaint. Whitney was not a "successful" plaintiff within the meaning of Harmon, although she may have succeeded in obtaining the relief requested. The school board's voluntary compliance cannot be viewed as an admission of the facts required to prove Whitney's claim for reinstatement. Thus, we conclude that the trial court properly refused to address the merits of Whitney's claim for back pay under IC 20–6.1–4–12(c).

■ We agree with Whitney that the waiver of any right to reinstatement did not waive her right to recover damages caused by the wrongful cancellation of her employment contract. If Whitney was in fact wrongfully discharged, then the school board could not have defeated her claim for damages by complying with her request for reinstatement after the mandate action had been commenced. However, a mandate action is not the proper cause of action to recover damages if reinstatement is effected through voluntary compliance. The issuance of a mandate is an extraordinary remedy, equitable in nature, and is viewed with extreme disfavor. Where an adequate remedy at law is available, the extraordinary remedy of mandate should not be imposed to compel performance of an act. *Indiana Revenue Board v. State ex rel. Board of Commissioners of County of Hendricks* (1979), Ind., 385 N.E.2d 1131, 1134. After Whitney waived any right to reinstatement, she was required to resort to the available remedies at law to vindicate her claim for back pay. The thrust of her complaint is primarily one for a mandate to effect her reinstatement. In the complaint, only scant, indirect references are made to any possible claim for back wage damages; therefore, Whitney must amend her complaint which is now based upon mandate relief and allege in her amended complaint sufficient facts to establish, for example, a breach of contract and the amount of back wages due as damages. The Teacher Tenure Act does not abrogate any remedies available to an aggrieved teacher before its

effective date. IC 1976, 20–6.1–1A–2(c)(2) (Burns Code Ed., 1980 Supp.).[1]

## II

### Cancellation Procedure

Whitney challenges the trial court's Conclusion of Law No. 17 which stated that the school board complied with the procedural requirements of the Teacher Tenure Act in cancelling her employment contract. Whitney contends that the school board failed to conduct a full and fair hearing by (1) failing to present any evidence in support of its decision to cancel her contract, (2) failing to provide her with a full statement of the reasons for cancellation, and (3) failing to make written findings of fact in support of its decision.

■ We agree that the school board failed to conduct a full and fair hearing.[2] The record reveals that the school board handled the cancellation of Whitney's employment contract in a perfunctory manner without adhering to the procedural requirements of the Teacher Tenure Act or the case law that has evolved from the Act. The facts leading to our conclusion are as follows:

On April 20, 1977, Whitney received a letter from Kenneth L. Cole, superintendent of the school corporation, informing her that the school board would not renew her employment contract for the 1977 78 school year. Cole stated in the letter that worsen-

ing economic conditions necessitated the cancellation of her contract. On May 12, 1977, Whitney requested that she be provided with a copy of the minutes of the school board meeting at which the decision to cancel her contract was made. On May 16, 1977, Cole sent to Whitney a letter informing her that the cancellation of her contract was part of a seven-point budget plan adopted by the school board on February 21, 1977. Cole did not include a copy of the minutes of the meeting with his letter. On May 19, 1977, the school board notified Whitney that the cancellation of her employment contract would be considered at a school board meeting on June 20, 1977. On May 29, 1977, Whitney informed the school board that it had not complied with the Teacher Tenure Act which delineates the procedure for cancelling the employment contract of a tenure teacher. In the letter, Whitney demanded immediate reinstatement to her teaching position, and, if not reinstated, she demanded that the school board provide a full statement of the reasons for cancellation and that the board conduct a hearing on the matter. The school board informed Whitney that a full hearing on the matter would be conducted at its June 20, 1977, meeting.

A hearing on the cancellation of Whitney's contract was held on the scheduled date. The school board's attorney informed Whitney that the purpose of the hearing was to consider the cancellation of her em-

---

1. We have found a few cases from other jurisdictions which have held that a plaintiff is not precluded from recovering damages incidental to a mandamus action when the plaintiff obtains voluntary compliance with the relief requested. *See*, 73 A.L.R.2d 903, § 2(e) (1960). Most of these cases involved actions in which no adequate remedy at law existed for the plaintiff after the defendant's pre-judgment voluntary compliance. We would find these cases persuasive if Whitney did not have an adequate remedy at law to litigate her claim for back pay. One case in the annotation, *Alberts v. Garofalo* (1958), 393 Pa. 212, 142 A.2d 280, held damages recoverable despite the existence of an adequate remedy at law. While *Alberts* and the present case are factually similar, the well-reasoned dissenting opinion in *Alberts* convinces us that the majority's approach is inappropriate.

2. We address this issue solely to reverse the trial court on its Conclusion of Law No. 17. The effect of our decision expunges from the Record the erroneous conclusion of law that Whitney was afforded a full and fair hearing. The trial court's entry of a negative judgment stands on the limited basis that Whitney proceeded under an unavailable remedy. If a plaintiff seeks a remedy that is determined to be unavailable, a dismissal of the action for that reason is not a final judgment on the merits. *See, Porter v. Nossen* (M.D.Pa.1973), 360 F.Supp. 527, *aff'd in unpublished opinion*, (3d Cir. 1975), 511 F.2d 1395; *Heaney v. Board of Trustees of Garden Valley School District No. 71* (1978), 98 Idaho 900, 575 P.2d 498; *see also*, Restatement, *Judgments*, § 65(2), comment (*i*), at 278 (1942); 21 A.L.R.3d 206 (1968).

ployment contract because of a justifiable decrease in the number of teaching positions.[3] The school board then requested that Whitney make a statement concerning the matter. Gerald Goen, a representative of the local teacher association, testified on behalf of Whitney and stated that the financial condition of the school corporation did not require the discharge of a tenure teacher. He supported his contention with a study concerning the revenues and expenditures of the school corporation. After Goen testified, Whitney requested that the school board reinstate her based on the evidence presented by Goen.

After Whitney presented her evidence, Reynold Johnson, a member of the school board, reiterated that Whitney's employment contract was being cancelled because of a justifiable decrease in the number of teaching positions, as indicated by "in depth studies." The studies referred to by Johnson were not introduced into evidence at the hearing, nor were their contents discussed. The school board then voted to cancel Whitney's employment contract.

■ The facts recited above reveal that Whitney was not afforded a full and fair hearing by the school board. Under Indiana law, the cancellation of a teacher's employment contract must be substantiated by evidence presented at a hearing when a hearing is required by law or contract. *Doran v. Board of Education of Western Boone County Community Schools* (1972), 152 Ind.App. 250, 258, 283 N.E.2d 385, 389, *rehearing denied with opinion*, 152 Ind.App. 263, 285 N.E.2d 825. Requiring a school board to present at a hearing all of the evidence on which it bases its decision affords the teacher the opportunity to challenge the school board's findings and prevents the school board from judging the case before hearing all of the evidence. In reversing the trial court's judgment against the teacher, the court in *Doran* stated:

"It is apparent, however, that the Board considered evidence not brought out at the hearing in deciding to terminate plaintiff-appellant's employment.

In our opinion, such a procedure is necessarily unfair and, therefore, not a hearing within the terms and conditions of plaintiff's contract, and is so prejudicial to the plaintiff-appellant that he did not receive a fair hearing."

152 Ind.App. at 258, 283 N.E.2d at 389. In its opinion on the petition for rehearing, the court further clarified the proper procedure for the presentation of the school board's evidence as follows:

"Of course, the school board is not precluded from making an investigation and, in fact, it is their obligation and duty to do so, or have it done. However, it must be done either by the school board or a duly authorized employee in conformity with the law and *any evidence which the members of the school board gather and know about prior to the hearing must not be relied upon by them or considered by them in arriving at their decision. They can and must rely only on the evidence presented at the hearing where the teacher charged is entitled to and shall have the right to cross examine the witnesses presented at the hearing*, together with the further right to introduce to the board evidence in his own behalf which shall be considered by the board in arriving at its decision." (Original emphasis.)

152 Ind.App. at 268-69, 285 N.E.2d at 829. Thus, a school board must substantiate its decision to cancel the employment contract of a tenure teacher with evidence presented at a hearing conducted in the presence of the teacher. This requirement ensures that the teacher will receive a fair and impartial hearing guaranteed by statute. *See also, Derloshon v. City of Fort Wayne, Department of Redevelopment* (1968), 250 Ind. 163, 234 N.E.2d 269; *City of Anderson v. State ex rel. Page* (1979), Ind.App., 397 N.E.2d 615.

In the present case the school board failed to present any evidence at the hearing held on June 20, 1977, to support its decision to cancel Whitney's employment contract. From the letters sent to Whitney

**3.** *See*, IC 1976, 20-6.1-4-10(a)(5) (Burns Code Ed., 1980 Supp.).

by Cole and the school board, the cancellation of Whitney's contract was apparently based on Cole's seven-point budget plan adopted by the school board at its February 21, 1977, meeting. However, the school board presented no evidence of the budget plan nor did it introduce evidence of the minutes of the meeting at which the budget plan was adopted. The school board merely read into the record the letters sent to Whitney by Cole and the school board, asked Whitney to make a statement about the matter and then voted to cancel her contract.[4] There is a complete lack of evidence in the record to indicate that the decrease in the number of teaching positions under the budget plan was justifiable.

On appeal, the school board contends that the budget plan was referred to several times during the hearing. It is the school board's position that the several references to the budget plan by Goen, who testified on behalf of Whitney, indicated that Whitney had knowledge of the reasons for the cancellation of her contract. The school board's contention is without merit. Mere knowledge of the existence of a budget plan is insufficient to satisfy the requirement that all of the evidence on which the school board based its decision must be presented at the hearing. Even if Whitney had knowledge of every detail in the budget plan, the school board would not have been relieved of its duty to present the budget plan at the hearing to establish that Whitney's discharge was justifiable. Furthermore, Whitney could not cross-examine or rebut evidence *not* presented at the hearing.

The school board also contends that it could consider evidence that had been presented at another meeting in reaching its decision. In its brief, the school board states:

"An administrative agency unlike a court does not conduct it's [sic] proceedings in a formal manner. The administrative agency can look at it's [sic] own record

and take judicial notice of it's [sic] own proceedings."

The school board's contention is clearly contrary to the holding of the *Doran* case. To permit the school board to take "judicial notice" of the evidence presented at the February 21, 1977, meeting would effectively deny Whitney the opportunity to challenge the evidence used by the board in reaching its decision.

It may be inferred from the record that the school board operated under the assumption that Whitney had the burden of proving that a decrease in the number of teaching positions was unjustifiable. This assumption was clearly erroneous. Whitney was afforded the opportunity to present rebuttal evidence that indicated the cancellation of her contract was economically unnecessary. However, she was not afforded the opportunity to challenge the evidence presented at the school board's February 21, 1977, meeting. The Teacher Tenure Act imposes the burden of proof on the school board to show that the decrease in the number of teaching positions is justifiable. The school board's contention that its burden is lessened when it is dealing with the cancellation of a teacher's contract for economic reasons rather than for disciplinary reasons is not persuasive. The school board must still prove its case even though the conduct of the teacher has not precipitated the need to cancel the teacher's contract. Thus, we conclude that Whitney was denied a full and fair hearing based on the school board's failure to present evidence in support of its decision at the hearing.

Whitney also contends that the trial court erred in failing to find that the school board was required to make written findings of fact on which it based its decision to discharge Whitney. Whitney cites the recent case of *State ex rel. Newton v. Board of School Trustees of Metropolitan School District of Wabash County* (1980), Ind.App., 404 N.E.2d 47, in support of her contention that the school board was required to make written findings of fact.

---

4. The school board also failed to comply with IC 1976, 20–6.1–4–11(a)(6)(A) (Burns Code Ed., 1980 Supp.), which requires the board to pro-

vide Whitney with "a full statement of the reasons for the proposed cancellation of the contract."

This Court stated in *Newton* that the Teacher Tenure Act does not specifically require the school board to make written findings of fact in discharge cases. Nevertheless, we held that the school board had a duty to make written findings of fact in support of its decision. The reasons for our conclusion were stated as follows:

> "[T]he existence of such findings is essential to preserve the limited scope of a reviewing court's inquiry. 'The absence of findings invites a reweighing of the evidence on review, thereby paving the way for judicial intrusion into matters committed to administrative discretion . . . .' *Yunker v. Porter County Sheriff's Merit Board* (1978), Ind.App., 382 N.E.2d 977 at 982. An administrative body has the duty to make a finding of the pertinent facts on which its decision is based in order to facilitate judicial review whether or not such findings are specifically required by statute. . . ." (Footnote omitted.)

404 N.E.2d at 48–49.

Based on *Newton*, we conclude that the trial court erred in not finding that the school board was required to make written findings of fact on which it based its decision.[5] We are not persuaded by the school board's assertion that Whitney should have demanded that the school board make written findings of fact.

### III.

#### Conclusion

The trial court's refusal to mandate the payment of damages under IC 20–6.1–4–12(c) after Whitney waived any right to reinstatement is affirmed. The trial court's Conclusion of Law No. 17, in which it found that Whitney was afforded a full and fair hearing under the Teacher Tenure Act, is clearly erroneous and is therefore reversed.

Affirmed in part; reversed in part.

HOFFMAN, P. J., and GARRARD, J., concur.

---

5. While the trial court did not have the benefit of the *Newton* case when it decided the present case, several other cases involving judicial review of decisions by administrative agencies had established the precedent that written findings of fact must be made. Those cases are cited in *Newton*.