**Jack T. HINKLE, Appellant (Plaintiff Below),**

v.

**The GARRETT–KEYSER–BUTLER SCHOOL DISTRICT, The Garrett–Keyser–Butler School District Board of School Trustees, in their Official Capacities, and Alan C. Middleton, Superintendent of the Garrett–Keyser–Butler School District, in his Official Capacity, Appellees (Defendants Below).**

**No. 17A03–9010–CV–457.**

Court of Appeals of Indiana, Third District.

March 13, 1991.

J. Timothy McCaulay, Helmke, Beams, Boyer & Wagner, Fort Wayne, for appellant.

H. Charles Winans, Garrett, for appellees.

STATON, Judge.

Jack Hinkle appeals the grant of summary judgment in favor of Garrett–Keyser–Butler School District (School) in Hinkle's action for reinstatement as teacher with

the School and for back pay. Hinkle presents this court with five issues for review, which we consolidate and restate as:

1. Whether Hinkle's right to a full and fair hearing was denied even though he failed to call and examine the students who had accused him of misconduct.
2. Whether the admission of hearsay evidence during the School Board hearing on Hinkle's contract cancellation violated Hinkle's right to a full and fair hearing.
3. Whether documents prepared by the county welfare department were properly admitted at the hearing under an exception to the hearsay rule.
4. Whether the decision to cancel Hinkle's contract is supported by sufficient evidence.

We affirm.

The School hired Hinkle as a full-time teacher on August 12, 1986. Hinkle was employed in the capacity of a semipermanent teacher under an indefinite contract when, on July 25, 1989, School Superintendent Alan Middleton sent Hinkle a notice that his indefinite teaching contract was under consideration for cancellation. After Hinkle requested the reasons for his impending dismissal, Middleton responded with a written statement incorporating allegations that Hinkle had "improperly touched" three female students, and that other students made similar allegations.

Soon after receiving Middleton's written response, Hinkle requested a hearing to contest the action. At the hearing, guidance counselor Ethel Yoder testified as to the allegations made to her by the students. The School Board overruled Hinkle's objection to the hearsay evidence. The School also presented the testimony of Sandi Anderson, a child welfare caseworker who had interviewed the complaining students, as well as most of the students from Hinkle's class. Over Hinkle's continuing objection, Anderson was permitted to testify as to what she was told by each student. None of the students attended the hearing to testify against Hinkle.

In addition, the School introduced three caseworker reports reiterating the allegations and concluding that sexual abuse was indicated. The reports were entered into evidence, again over Hinkle's objection, as a business record exception to the hearsay rule. Hinkle presented witnesses on his behalf, and testified himself. Although he admitted that he had hugged female students on one occasion, Hinkle denied any sexual misconduct. The School Board voted to cancel Hinkle's contract, and Hinkle sought review with the trial court.

The trial court found that, despite the admission of hearsay statements, Hinkle was afforded a full and fair hearing on the merits. The court further held that the written caseworker reports were properly admitted into evidence as business records and official records of a public agency. Concluding that Hinkle could have called the students as witnesses, the court found that he was not denied the opportunity to confront and question his accusers. Finally, determining that the School Board's decision was based on substantial evidence, and finding no genuine issue of material fact on review, the trial court granted the School's motion for summary judgment.

### Standard of Review

■ In a review of a school board decision, we stand in the same position as does the trial court; that is, our review is limited to determining whether the board followed the proper procedures and whether there is substantial evidence to support the board's decision. *Scott County School Dist. 2 v. Dietrich* (1986), Ind.App., 499 N.E.2d 1170. Under this standard of review we may not review the weight and effect of the evidence upon which the administrative decision is based. *Fiscus v. Central School Dist. of Greene County* (1987), Ind.App., 509 N.E.2d 1137, *trans. denied.*

### I.

### Confrontation of Witnesses

The trial court determined that Hinkle's right to confront and cross-examine his accusers was not violated because he could

have called those students as witnesses at the hearing. We agree.

■ Our supreme court has consistently held in criminal cases that a defendant may not be heard to say that the right to confrontation has been denied where the accused makes no attempt to call the witness to the stand. *Allbritten v. State* (1974), 262 Ind. 452, 317 N.E.2d 854 (where defendant wishes to have a particular witness testify, he must call that witness; no affirmative duty on the state to call any particular witness); *Walker v. State* (1970), 255 Ind. 65, 262 N.E.2d 641 (where no request made by defendant to secure informant's appearance at trial, there has been no deprivation of the defendant's right to confront witnesses against him).

■ The same rule should apply in an administrative hearing before a school board. If a teacher wishes to confront and cross-examine a particular witness, that teacher must request that the particular witness appear at the hearing. As the trial court correctly noted, Hinkle could have performed the typical cross-examination of his accusers, who would have been properly classified as hostile witnesses. Hinkle made no request for his accusers to appear at the hearing, although they were known to him at the time. Moreover, Hinkle does not contend that he was denied the opportunity to confront and cross-examine the witnesses who testified. There was no deprivation of Hinkle's right to confront and cross-examine his accusers in this case.

## II.

### *Hearsay Testimony*

■ Hinkle first challenges the trial court's conclusion that he received a full and fair hearing pursuant to the Teacher Tenure Act, given the extensive hearsay testimony elicited from guidance counselor Yoder and welfare worker Anderson. The Act establishes the hearing requirements for the cancellation of an employment contract:

(a) An indefinite contract with a permanent or semipermanent teacher may be cancelled only in the following manner:

\* \* \* \* \* \*

(6) At the hearing, the teacher is entitled:

(A) To a full statement of the reasons for the proposed cancellation of the contract; and

(B) To be heard, to present the testimony of witnesses and other evidence bearing on the reasons for the proposed cancellation of the contract[.]

IC 20-6.1-4-11 (Burns Ed.1985). In *Whitney v. Bd. of School Trustees* (1981), Ind. App., 416 N.E.2d 1289, we determined that a teacher is denied the right to a full and impartial hearing when a school board fails to comply with the above procedural requirements. However, unlike the situation in *Whitney*, Hinkle does not contend that the School Board failed to provide him with a full statement of the reasons for the proposed cancellation or that the Board failed to present evidence in support of its decision. Rather, Hinkle maintains that the introduction of hearsay evidence deprived him of the type of hearing guaranteed by the Act.

■ Hinkle relies on *Doran v. Bd. of Educ. of W. Boone County Community Schools* (1972), 152 Ind.App. 250, 283 N.E.2d 385, *reh. denied* 152 Ind.App. 250, 285 N.E.2d 825, for the proposition that consideration of hearsay evidence by a school board in such a proceeding is improper and results in the denial of the right to a full and fair hearing. Although Hinkle's interpretation of *Doran* is correct, to the extent that hearsay was one of the two grounds for reversing the board's decision, we do not agree that consideration of hearsay evidence, *per se*, requires a finding that a teacher has been denied a full and impartial hearing.

We say this for two reasons. First, *Doran* was decided prior to the enactment of the Teacher Tenure Law specifying the procedural requirements to be followed in these cases. Second, as the court itself stated in *Doran*, "the members of the school board ... heard the charges

presented against the [teacher] as an administrative body. As such, the [board] is charged with the same legal procedure of accepting or rejecting evidence as a state wide administrative body." 152 Ind.App. at 254, 283 N.E.2d at 387. The current legal procedure employed by state wide administrative agencies for accepting or rejecting evidence is outlined by the Administrative Orders and Procedures Act.[1]

■ Under IC 4–21.5–3–26, an administrative law judge may allow hearsay statements into evidence. It is unreasonable to suggest that a school board should be held to a higher level of compliance with the rules of evidence and procedure than an administrative agency. Indeed, as the *Doran* court clarified on rehearing, "we did not intend that school board hearings comply with formalities of the [now superseded] Indiana Administrative Adjudication and Court Review Act." 152 Ind.App. at 266, 285 N.E.2d at 828. Moreover, the interest to be protected, that of avoiding the likelihood that students would have to testify on such matters in the presence of their peers or teachers, is more compelling than in the typical administrative adjudication.

■ The admission of hearsay in an administrative action is not, however, without limitation. Pursuant to IC 4–21.5–3–26, if hearsay evidence is properly objected to and does not fall within a recognized exception to the hearsay rule, the resulting order may not be based solely upon the hearsay evidence. *Id.* This codification of the common law "residuum rule" has been interpreted as requiring some corroborative evidence to support an administrative order when hearsay has been admitted over objection. *C.T.S. Corp. v. Schoulton* (1978), 270 Ind. 34, 383 N.E.2d 293. If not objected to, the hearsay evidence may form the basis for an order. *Id.;* IC 4–21.5–3–26. We hold that the same rule applies to a school board in a hearing convened under the Teacher Tenure Act.

In this case, Hinkle made the appropriate objections to the testimony of Yoder and

Anderson, and there is no contention that the hearsay elicited fell within a recognized exception; therefore, the School Board may not base its finding solely upon such evidence. Although we find that the admission of hearsay testimony is not of itself a basis for reversal, Hinkle may yet prevail if it is shown that the order was based solely upon incompetent evidence.

### III.

*Admissibility of Welfare Reports*

After ruling that the hearsay testimony of Yoder and Anderson was improperly admitted, the trial court proceeded to sustain the action of the School Board because the order was supported, in part, by certain written reports of the Dekalb County Welfare Department. The reports contained accounts of Hinkle's alleged misconduct, and were admitted into evidence under the business record exception to the hearsay rule. The trial court found that the reports were admissible under the official record exception as well as under the business record exception. Hinkle asserts that these reports did not meet the requirements of either exception to the hearsay rule.

There is no dispute that the reports contain statements made by out-of-court declarants offered at the hearing to prove the truth of the matter asserted. Hinkle correctly identifies these statements as hearsay. *See State v. Edgman* (1983), Ind. App., 447 N.E.2d 1091, *trans. denied.* Therefore, the reports must fall under a recognized exception to the hearsay rule to be considered as competent evidence.

■ The business records exception has been defined in the following manner:

documentary evidence is admissible if identified by its entrant or one under whose supervision it is kept and shown to be an original or first permanent entry, made in the routine course of business, at or near the time of the recorded transaction, by one having both a duty to so record and personal knowledge of the transaction represented by the entry.

---

1. IC 4–21.5–1–1 et seq.

*American United Life Ins. Co. v. Peffley* (1973), 158 Ind.App. 29, 36–37, 301 N.E.2d 651, 656, *reh. denied* (1974), 158 Ind.App. 29, 306 N.E.2d 131. Hinkle insists that the reports do not meet the requirements of the business record exception inasmuch as the preparer had no first-hand knowledge of the claimed misconduct. This assertion is correct. The welfare workers in the present case prepared their reports based on statements made to them after the alleged misconduct occurred. The statements were made by students having no business duty to record their claims. The court in *Edgman, supra,* at 1103, excluded an accident report prepared by a police officer for the same reasons. The police officer, while under a [legal] duty to prepare the report, did not witness the accident. The sources of the information contained in the accident report were under no business duty to observe and report the facts of the accident. *Id.* The requirement that the observation and recordation of the facts be made by someone in the regular course of business assures the accuracy and reliability that justifies the exception to the hearsay rule. *Id.; Wells v. State* (1970), 254 Ind. 608, 616, 261 N.E.2d 865, 870. The trial court's determination that the reports fell within the business record exception to the hearsay rule was erroneous.

 Under the official record exception to the hearsay rule, the reports could have been properly admitted in one of two ways.[2] First, under the common law rule, the proponent must show that the document is the written statement of a public official; that the official had the duty to make the record; and that the official had personal knowledge of the facts. *Starkey v. State* (1977), 266 Ind. 184, 361 N.E.2d 902. As is the case with the business record exception, the School's reliance on the public record exception is undermined by the officials' lack of personal knowledge of the facts giving rise to the allegations of misconduct.

**2.** Authentication of an official record may be accomplished in a third manner under Ind. Rules of Trial Procedure, Trial Rule 44.

 The statutory foundation for the admission of official records does not require firsthand knowledge of the facts, but provides that copies of records kept in any public office in the state may be admitted if attested to and properly certified.[3] Welfare caseworker Anderson testified that the reports were exact copies of the records kept in her office. However, even assuming the reports were properly authenticated, the additional hearsay statements which make up the lion's share of the reports have no independent basis for their admission. It is a well established principle of law that double hearsay is admissible only if an exception exists for each out-of-court declaration. *See, e.g., Keramida v. Zachmanoglou* (1984), Ind.App., 470 N.E.2d 769 (written psychologist's report that recounted statements of psychologist and statements made to psychologist by persons acquainted with the party admissible under the *Patterson* rule where psychologist and acquaintances testified and were available for cross-examination). No exception for the hearsay statements of Hinkle's accusers has been established in this case. Therefore, the trial court erred when it determined the Welfare Department records were admissible as exceptions to the hearsay rule. In light of our resolution of the first issue, however, admission of these reports would not amount to reversible error so long as there is competent evidence upon which the Board based its order.

## IV.

### *Sufficiency of Evidence*

 The trial court further held that the order terminating Hinkle's contract was based in part on Hinkle's admissions at the hearing and on other competent evidence. While on the witness stand, Hinkle admitted to hugging at least one of his female students, and acknowledged that he may have touched the buttocks of some students when he rested his feet on their chairs. Hinkle agreed that, regardless of

**3.** IC 34–1–17–7.

his intentions, his actions had "obviously" created an atmosphere of fear and mistrust in his classroom.

The existence of this atmosphere was borne out by the competent evidence supplied by Yoder, who related her personal observations that some of Hinkle's female students were crying and otherwise visibly upset, and that these students would not stay in Hinkle's classroom. The School Board indicated in its findings that the decision to cancel Hinkle's contract was based in part on this evidence. This being the case, it is clear that the hearsay discussed above was not the sole basis of the order. Considering all the evidence produced at the hearing, we must conclude that such evidence was sufficient to support the determination of the School Board. To conclude otherwise would require this court to weigh evidence and judge witness credibility, a role reserved for the hearing officers of the School Board.

Affirmed.

HOFFMAN and RUCKER, P.JJ., concur.