DERLOSHON ET AL. *v.* CITY OF FORT WAYNE ON BEHALF
OF ITS DEPT. OF REDEVELOPMENT ET AL.

[No. 31,164. Filed February 29, 1968. Rehearing denied
April 4, 1968.]

164

*Alexander M. Campbell, J. Philip Burt,* of Fort Wayne, for appellants.

*Otto E. Grant, Jr., J. A. Bruggeman, Barrett, Barrett & McNagny,* of Fort Wayne, for appellee.

ARTERBURN, J.—This is an action of condemnation pursuant to Burns' Ind. Stat. Anno. § 3-1701, et seq. [1946 Repl.] the appellee, City of Fort Wayne commenced on behalf of its Department of Redevelopment. The appellants filed objections to the complaint in the action pursuant to the condemnation statute. (Burns' Ind. Stat. Anno. § 3-1705 [1946 Repl.]). The trial court sustained a demurrer to the objections and entered an interlocutory order overruling appellants' objections without hearing evidence thereon, and appointed appraisers. From such ruling this appeal is taken.

The substance of the objections was that the Redevelopment Commission sought to take the appellants' private property by a condemnation action and turn it over for the private use thereafter to the Joslyn Stainless Steel Company of Fort Wayne, Indiana; that the motive and purpose of the Redevelopment Commission is not to eliminate blight in the area where the appellants' property is located, but is a private purpose, namely, to take appellants' private property and transfer ownership to the private use of a steel company through perversion and misuse of the Redevelopment statute and condemnation proceedings; that such action is "arbitrary and capricious and will result in the taking of the property of these defendants without due process of law and in violation

of the Constitution of the State of Indiana and the Constitution of the United States of America."

The appellants further contend that they were deprived of the right to be heard on the issue of perversion or misuse of the eminent domain action. They urge that they have the right to show at a hearing that this steel plant is located more than a mile from the main area designated for redevelopment, and that the particular pieces of land these appellants owned are isolated from the main redevelopment project, and are adjacent to the two sides of the plant owned by the Joslyn Stainless Steel Company. Appellants further argue that taking the land and conveying it to the steel company will not eliminate blight in the area, but aggravate the same.

Appellants further argue that they are not contesting the issue of whether or not the designated property is blighted, but state that in fact it is surrounded by other property that is likewise in the same condition, which is not being included in the redevelopment project; that the somewhat isolated piece of property in question is being seized by means of eminent domain proceedings from the appellants, private individuals, and is to be conveyed to the Joslyn Stainless Steel Company as a private individual, serving no public purpose; that the appellants have refused to sell, and this eminent domain proceeding is a subterfuge to force appellants to sell. We state the contentions of the appellants in order that the gravity of the issue involved may be clearly presented.

Eminent domain proceedings for seizing private property are powerful instruments of government. Such powers and rights, however, are not unlimited, and the private property owner and citizen has a right constitutionally to defend against subterfuge and bad faith in the seizure of his property, and may show that it is not to be applied to the public purpose and use as alleged. We do not have here a question of the constitutionality of the Redevolopment Act, but rather a question of whether or not a private prop-

erty owner has a right to raise the issue that a public official or a public body is acting outside its power and scope of authority and is arbitrary and capricious in attempting to seize private property for other than a public purpose, and in fact, for private use of another private party. It would seem to us that the answer is obvious: that no private citizen can be compelled to submit to the actions of public officials or a board which he claims to be arbitrary and capricious without a right to be heard on that question; otherwise, democratic government ceases and becomes dictatorial. In this connection we have stated:

"We believe that the inquiry of the courts is not limited alone to a consideration of whether the 'use'—'park purposes'—which a city assigns in its condemnation proceedings as the use to be made of the property, is or is not a public use, (if that were true there would really be no limitation on the power of cities to acquire property), but that a consideration may be had of all the surrounding facts and circumstances tending to show what is the actual, principal and real use to be made of the property." *Kessler* v. *City of Indianapolis* (1927), 199 Ind. 420, 426, 157 N. E. 547, 549.

In justice to the appellee in this case, we must state that the appellee concurs in the general principles of law announced above, but contends that the condemnation proceeding is not the place to make the objections here set forth; that such objections should be raised at the time of the hearing on the declaratory resolution adopted by the Redevelopment Commission approving the general plan. Section 48-8554, Burns' Ind. Stat. Anno. provides for a general notice to be published once each week for two consecutive weeks, stating that the Redevelopment Commission will receive and hear remonstrances and objections from persons interested in and affected by the proceedings pertaining to the proposed project "when it will determine the public utility and benefit hereof," and that maps and plans are on file which may be inspected at the office of the Redevelopment Department. The statute further pro-

vides that after the commissioners have considered all remonstrances and objections, they "shall take final action to determine the public utility and benefit of such project," and it further provides that aggrieved persons may take an appeal within ten days thereafter to the circuit or superior court of the county.

Burns' Ind. Stat. Anno. § 48-8555 [1963 Repl.] provides in part that:

". . . The only ground of remonstrance which said court shall have the power or jurisdiction to hear shall be the question whether the proposed project will be of public utility and benefit, and the burden of proof shall be upon the remonstrator."

The appellants state that they did remonstrate at such a hearing and they now make no contention on the issue as to whether or not the property was blighted and whether or not the project, as officially proposed, will be of public utility and benefit. The appellants do contend, however, that under the 1963 amendment to the Redevelopment Act (Burns' Ind. Stat. Anno. § 48-8557 [1963 Repl.], the Redevelopment Commission and the City of Fort Wayne must follow the general eminent domain law in the taking of any property, this being Burns' Ind. Stat. Anno. § 3-1701, et seq. [1946 Repl.]. The 1963 amendment appears to us to be clear in that respect and supports the appellants in their position.

The general eminent domain law further provides in Burns' Ind. Stat. Anno. § 3-1705 in part as follows:

"Any defendant may object to such proceedings on the ground that the court has no jurisdiction either on the subject-matter or of the person, or that the plaintiff has no right to exercise the power of eminent domain for the use sought, *or for any other reason* disclosed in the complaint or set up in such objections. Such objections shall be in writing, separately stated, and numbered, and shall be filed not later than the first appearance of such defendant." (Our italics)

An inspection of the statutes in question shows that objections to the declaratory resolution provided for in the statute (Burns' Ind. Stat. Anno. § 48-8555 [1963 Repl.], ■■ specifically limits the objections to the question of *the utility or benefit* of the project, and therefore the administrative remedy afforded does not grant the means broad enough to raise the question and cover the issue here presented, namely, the right of the Redevelopment Commission to take private property for uses other than public utility and benefit. In this connection we note that only ten days is given under the statute to make objections after the general newspaper notice. The notice does not provide for the naming of any specific individuals or parties whose land is to be taken, nor does it provide for a description of the land, but only notice that maps and plats are on file for inspection. Finally, the owner of the land may not know at the time the motive or objective as to the use of the property if it is condemned and taken from him. It would seem that this notice under due process is totally inadequate and not informative when it comes to taking private property from an individual. There must be a meaningful and knowledgeable waiver of rights upon which one is fully informed by proper notice before it can be said that his property may be taken. In this case it seems to us the type of notice provided for in the statute, if it is to be applicable to the taking of private property in eminent domain proceedings, is far too meager. Notice generally to the public, giving them an opportunity to object or remonstrate against the utility of some public project, is of a different character entirely from a notice to particular individuals that their private property is to be seized and condemned. The latter type of notice must be particular, detailed and informative, so that a party may not be misled.

We previously have given consideration to the type of hearings had upon declaratory resolutions in *Jeffersonville Redevel. Com'n.* v. *City of Jeffersonville* (1967), 248 Ind. 568, 229 N. E. 2d 825. We there stated that the provisions for such

hearings on the general nature of the outcome of the project, as provided in the statute, was proper, but that it could not be unduly restricted, and stated at 229 N. E. 2d, p. 827:

"We are of the opinion that the appellee was so restrictive in its interpretation of Burns', § 48-8554, *supra,* that the hearing was not meaningful. The legislature intended that those persons affected by the Declaratory Resolution should have a right to call upon the commissioners and their employees to explain in total all information and data bearing upon whether or not the area described in the declaratory resolution was, in truth, blighted.

" 'An Administrative hearing, particularly where the proceedings are judicial or quasi-judicial, must be fair, or, as frequently stated, full and fair, fair and adequate, or fair and open. There must be adequate notice of issues, and the parties must be given an opportunity to be present, to submit evidence, and to cross-examine witnesses. . . .' I.L.E., Administrative Law and Procedure, § 41.

" 'A full hearing at which every party has the right to present his case or defense by oral or documentary evidence, to submit rebuttal evidence, and to conduct such cross-examination as may be required for a full and true disclosure of the facts, is essential for wise and just application of the authority of administrative agencies. . . .' 2 Am. Jur. 2d, Administrative Law, § 397.

"An administrative tribunal cannot rely on its own information for support of its findings, and an order of the tribunal must be based on evidence produced in the hearing at which an opportunity is given to all interested parties to offer evidence and cross-examine witnesses. *Gigger* v. *Board of Fire and Police Com'rs of City of East St. Louis* (1959), 23 Ill. App. 2d 433, 163 N. E. 2d 541."

Such a hearing, however, under the statute is limited to the benefits and utility of the project by its very wording.

At some place in the proceedings where private property is taken from private individuals by a governmental agency, a party whose property is being condemned is entitled to raise the issue as to whether or not the proceedings are in good faith or a subterfuge used to convey pri-

vate property to a private individual for private use. In other words, fraud vitiates all proceedings, it has been said, and every litigant is entitled to his day in court on the issue of whether or not he is a victim of capricious, arbitrary, governmental action. *Cemetery Company* v. *Warren Sch. Twp. et al.* (1957), 236 Ind. 171, 139 N. E. 2d 538.

The general eminent domain statute, we feel, is sufficiently broad to permit the raising of such an issue. Burns' Ind. Stat. Anno. § 3-1705 [1946 Repl.] cited above, we note, provides that any defendant may object to the bringing of an eminent domain proceeding to take his private property on the ground that the plaintiff has no right to exercise the power "or for any other reason disclosed in the complaint or set up in such objections." We know no reason for limiting the broad language of that statute. It is clear and plain to us, as we have previously stated, that there is a time and place for raising the issues raised in this case.

In *Cemetery Company* v. *Warren Sch. Twp. et al.* (1957), 236 Ind. 171, 178, 139 N. E. 2d 539, 541, we stated:

"The gist of appellee's contention is that the trial court lacked jurisdiction to consider appellant's objections. The implications of this position would seem to be at variance with the normal concept of due process. If the contention is valid it would mean the courts are prevented from adjudicating the legal right to take property merely upon the filing of a suit with certain allegations therein, without proof, and without permitting the parties thereto to make objections, questioning the authority to bring the suit. The position of the court would thereby be reduced to a mere administrative tribunal with a mandatory duty of ordering an appropriation and fixing the value of the property taken. The function of adjudicating the legal rights of the parties would be denied the courts. As long as the judiciary remains an effective part of our government it cannot be deprived of its proper role; that of determining the legal rights of the litigants. Likewise, every person is entitled to seek relief from oppressive actions, and that place in a law-abiding society is in the court room. At some place in the proceedings, and by some method the landowner is entitled to contest the legality of the condemnation proceedings, and

question the authority under which the attempt is being made to take his property including the issue of whether or not it is a private or public purpose. *Joint County Park Bd.* v. *Stegemoller* (1950), 228 Ind. 103, 88 N. E. 2d 686, 89 N. E. 2d 720; *Foltz, Van Camp Hdw., etc.* v. *City of Indianapolis* (1955), 234 Ind. 656, 130 N. E. 2d 650."

The appellants contend they were denied the right to be heard upon the issues by the overruling of their objections and the sustaining of demurrer thereto. In our opinion, the appellants are right. They are entitled to be heard on these factual issues.

These factual issues involve the question of whether the property is being taken primarily for a public use and utility or for a purely private use, and whether or not the official proceedings are being perverted from their proper public purpose. There is a fine line of distinction in this area of investigation. In the recent case of *First Nat. Bank* v. *Penn-Harris-Madison Sch. Corp.* (1967), 249 Ind. 200, 231 N. E. 2d 238, we had before us a consideration of whether or not property being acquired by a school corporation could be transferred to a private holding corporation and re-leased to the school for school purposes. There this Court, speaking through Judge Lewis, held that a public use was involved and stated in 231 N. E. 2d at p. 240:

> "From the above statements it appears that this Court must look to the use for which this land is to be taken. It is stipulated, in the case at bar, that the land is being condemned by a duly organized school corporation for educational purposes. We conclude that the intervention of a private leasing corporation should not thwart an endeavor to condemn land for a public purpose.
>
> "Indeed, at the present time, a school corporation is attempting to acquire a school site. The method of financing and the lease back arrangement is only in a planning stage. However, if carried out in a bona fide leasing arrangement which would meet the requirements of Burns' Indiana Statutes, Anno., § 28-3239, *supra,* we are compelled to hold that the land is to be used for a sufficient public benefit to warrant its being acquired under an eminent domain procedure."

Recently also, this Court, in *Hawkins* v. *City of Greenfield* (1967), 248 Ind. 593, 230 N. E. 2d 396, considered the constitutionality of the Municipal Economic Development Act of 1965 and the appropriation of funds for the purpose of economic development. We had occasion, in holding the act constitutional, to review the subject matter in that opinion, and Judge Mote, speaking for the Court, stated in 230 N. E. 2d at pp. 403, 404:

> "The case of *Foltz, Van Camp Hardware, etc.* v. *City of Indianapolis* (1955), 234 Ind. 656, 130 N. E. 2d 650, presented a situation quite similar to the one at bar. We held therein that eminent domain or condemnation properly could be exercised by a municipality to provide off-street parking facilities to be leased to a private operator for profit. This court therein remarked:
>
>> " 'The court decisions, through the centuries, recognize that changing economic conditions create new uses and businesses that were not in existence or contemplated in earlier times, and that certain kinds of businesses are affected with a public interest. . . . The first test of a public calling or "business affected with a public interest" was that of economic necessity.' "
>
> "The recent case of *Orbison* v. *Welsh, supra,* presents a splendid example of comparable legislative intent and expressed public policy. This court upheld therein the constitutional validity of the Indiana Port Commission Act which also provided for an agency of the State to lease state-owned land to private persons for private profit. This court stated:
>
>> " 'The same argument here advanced against the validity of a lease by a public corporate entity such as the Port Commission to private persons was refuted in the case of *North Carolina State Ports Authority* v. *First-Citizens Bank & Trust Co.* (1955), 242 N. C. 416, 422, 88 S. E. 2d 109, 113, where the court stated: . . . "When used by lessees under the facts already stated, the use is a public one. The use is public while the property is thus leased, because it fills an undisputed necessity existing in regard to these common carriers by water, who are themselves engaged in fulfilling their obligations to the general public—obligations which could not otherwise be properly or effectually performed.' "

It will be noted that throughout all these opinions, the purpose and use of the property must be public, even though it is conveyed to private individuals, as in the off-street parking case (*Foltz, et al.* v. *City of Indianapolis, supra*), where it was proposed to lease to a private business to be used for a public purpose.

In *Kessler* v. *City of Indianapolis, supra,* the Board of Park Commissioners sought to take a small piece of land adjacent to a park for the ostensible use of the park, but it was shown that the ultimate and primary motive of the proceeding was to turn the property over to a private individual for a private roadway and private use. This Court held that such an attempt through eminent domain proceedings would not be approved by this Court; that the Court may inquire into the "actual purpose" and the "motive" of the proceedings, and that a private party has a right to challenge the ultimate and real motive, intent and purpose of the eminent domain proceedings under which his private property is being taken. In *Kessler* v. *City of Indianapolis* (1927), 199 Ind. 420, 427, 157 N. E. 547, 549, we stated:

> "The power of eminent domain may be exercised only for public purposes and not for a private purpose and the taking of private property for a private use violates the constitutional rights of the owner. *Fountain Park Co.* v. *Hensler* (1927), *ante* 95, 155 N. E. 465. The power of eminent domain cannot constitutionally be delegated for an essentially private purpose, even though a public purpose will be incidentally served thereby. 20 C. J. 556, note 66. On the other hand, a use which is in itself of a public character, justifying the exercise of the power of eminent domain, does not lose its character as such by the fact that the exercise of the power for such use will *incidentally* result in a private use or benefit. *Wisconsin River Improvement Co.* v. *Pier* (1908), 137 Wis. 325, 118 N. W. 857, 21 L. R. A. (N. S.) 538; 20 C. J. 556, note 67." (Original italics)

We therefore hold that the proper place to raise such an issue as to the purpose and motives for which the property

is being taken, the issue of any fraud or perversion as to the use of eminent domain proceedings by a public official is in the eminent domain proceedings at the point where the statute says:

"Any defendant may object to such proceedings on the ground the court has no jurisdiction either of the subject matter or of the person or that the plaintiff has no right to exercise the power of eminent domain for the use sought or for any other reason disclosed in the complaint or set up in such objections." Burns' Ind. Stat. Anno. § 3-1705 [1946 Repl.].

It appears the appellants were erroneously denied this right in this case.

The judgment is reversed, with directions to overrule the demurrer to the objections filed and hold a hearing upon the merits of the objections and remonstrances filed under and pursuant to Burns' Ind. Stat. Anno. § 3-1705 [1946 Repl.].

Lewis, C. J. and Mote and Hunter, JJ. concur.

Jackson, J. concurs in result.

NOTE.—Reported in 234 N. E. 2d 269.