# FOR PUBLICATION



**FILED**
Jul 31 2014, 9:29 am

*[signature]*

**CLERK**
of the supreme court,
court of appeals and
tax court

ATTORNEYS FOR APPELLANTS:

**THOMAS E. MIXDORF**
**EILEEN P.H. MOORE**
**TIMOTHY E. OCHS**
Ice Miller LLP
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE:

**MELVIN R. DANIEL**
**RAEGAN GIBSON**
Benesch, Friedlander, Coplan &
Aronoff, LLP
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

|  |  |  |
|---|---|---|
| BROOKVIEW PROPERTIES, LLC and FIRST MERCHANTS BANK OF CENTRAL INDIANA, | ) ) ) | |
| Appellants-Plaintiffs, | ) ) | |
| vs. | ) ) | No. 32A04-1312-PL-606 |
| PLAINFIELD PLAN COMMISSION, | ) ) ) | |
| Appellee-Defendant. | ) | |

APPEAL FROM THE HENDRICKS SUPERIOR COURT
The Honorable David H. Coleman, Judge
Cause No. 32D02-1302-PL-23

**July 31, 2014**

**OPINION - FOR PUBLICATION**

**NAJAM, Judge**

## STATEMENT OF THE CASE

Brookview Properties, LLC and First Merchants Bank of Central Indiana (collectively "Brookview") petitioned the Town of Plainfield for approval of a Planned Unit Development ("PUD") preliminary plan and final detailed plan for development of a proposed apartment complex. The Plainfield Plan Commission ("Plan Commission") denied the petition following a public hearing. Brookview filed a verified petition for judicial review, and the trial court affirmed the Plan Commission's denial of the development plan. Brookview appeals the trial court's judgment in favor of the Plan Commission and raises the following consolidated and restated issues for our review:

1. Whether the Plan Commission exceeded its authority when it denied the development plan.

2. Whether the Plan Commission's findings are adequate.

3. Whether the Plan Commission's decision violated Brookview's right to substantive and procedural due process.

4. Whether the Plan Commission's decision constituted an uncompensated taking in violation of the United States and Indiana Constitutions.

We affirm.

## FACTS AND PROCEDURAL HISTORY

A PUD is a zoning district in which a planned mix of residential, commercial, and even industrial use is sanctioned subject to restrictions calculated to achieve compatible and efficient use of the land. 2 Anderson, The American Law of Zoning 4d § 11.12 (1986). Such a district is commonly approved where a large tract of land is owned by a developer capable of insuring the improvement of the entire area within the guidelines

2

established by the municipality. Id. The PUD process enables an owner of a tract of land to negotiate with the municipality regarding the manner in which the land will be developed. T.W. Thom Constr., Inc. v. City of Jeffersonville, 721 N.E.2d 319, 326-27 (Ind. Ct. App. 1999). In 2003, the Town of Plainfield created a PUD called Metropolis. The Plainfield Town Council ("the Town Council") rezoned 190 acres of land "from I-1 office/research industrial and I-2 office/warehouse/distribution to PUD market place planned unit development." Appellants' App. at 35.

The Metropolis PUD was initiated by Frank and Phyllis Gladden, the original owners of the property, and Chris White of Premiere Properties, LLC, the original developer of the property, through a rezoning petition identified as PUD-02-003. In December 2002, the Plan Commission heard the rezoning petition and recommended its approval. The Town Council approved the rezoning petition through special legislation in the form of Ordinance 20-2002 ("the Ordinance"). Exhibit A attached to the Ordinance is entitled "COMMITMENTS CONCERNING THE USE OR DEVELOPMENT OF REAL ESTATE MADE IN CONNECTION WITH A DEVELOPMENT PLAN APPROVAL, ZONE MAP CHANGE OR PLANNED UNIT DEVELOPMENT REQUIRED BY THE TOWN OF PLAINFIELD ZONING ORDINANCE" ("the Commitments"). Appellants' App. at 256. The Commitments provide in relevant part as follows:

STATEMENT OF COMMITMENTS:

1. Owner/Petitioner acknowledges that the plans submitted in connection with PUD-02-003 constitute a "concept plan" and do not meet the standards of a "preliminary plan" as specified in Article 6 of the Plainfield Zoning Ordinance. Therefore, Owner/Petitioner agrees to

3

provide all of the elements of a preliminary plan in the review process described in Exhibit 1.

2. The petitioner shall meet all the other requirements specified in Exhibit 1.

3. All requirements of Exhibit 1 shall be determined to be satisfactory by the Plan Commission and Town Council prior to Secondary Detailed Plan Approval for each phase.

These COMMITMENTS shall run with the land, be binding on the Owner of the above-described real estate, subsequent owners of the above-described real estate and other persons acquiring an interest therein. These COMMITMENTS may be modified or terminated by a decision of the Town of Plainfield Plan Commission made at a public hearing after proper notice has been given.

COMMITMENTS contained in this instrument shall be effective upon the approval of petition # PUD-02-003 pursuant to the Town of Plainfield Zoning Ordinance, and shall continue in effect until modified or terminated by the Town of Plainfield Plan Commission.

These COMMITMENTS may be enforced jointly or severally by:

1. The Town of Plainfield Plan Commission;

2. Owners of all parcels of ground adjoining the real estate to a depth of two (2) ownerships, but not exceeding six-hundred (600) feet from the perimeter of the real estate, and all owners of real estate within the area included in the petition who were not petitioners for approval . . . .

Appellants' App. at 257 (emphases added). Exhibit 1 to the Commitments provides in

relevant part as follows:

2. At the time of the Plan Commission PUD rezoning request, a map which specifies the anticipated phasing and land uses of the project shall be provided.

* * *

5. The developer shall participate in a special Committee review process, which Committee shall be formed within 90 days by the Town of Plainfield, and shall review requirements as further specified in these commitments. The Committee shall be advisory only. The Committee

4

shall evaluate the project as one or more phases, and provide a recommendation for each phase to the Design Review Committee and the Plan Commission prior to the submission of a Secondary Detailed Plan for each phase. The review process shall also include at least one presentation to the Plainfield Plan Commission for each phase, prior to filing a Secondary Detailed Plan.

\* \* \*

8.      The overall project (completion of all initial review phases of the subject PUD) shall be completed in a maximum of 3 years, with extensions possible, if approved by the Plan Commission and Town Council.

9.      Phase 1 Committee review of this project shall be a maximum of one year, with extensions possible, if approved by the Plan Commission and Town Council.

\* \* \*

13.      The Committee review for each phase shall include, prior to application for a Secondary Detailed Plan, a submission of plans and typical details for review of the overall layout, site plans, parking, landscape plans, signs, lighting, building materials, and general appearance of all facades.

14.      Committee review for each phase shall be followed by submittal of a Secondary Detailed Plan within 60 days, for subsequent review by the Design Review Committee and Plan Commission, and shall include a development statement stating all of the development standards for that phase. The development standards for similar land uses shall not change substantially from phase to phase. Final plans and related details from item 13 shall also be included in the submittal. . . .

Id. at 260-61 (emphasis added).

Finally, Plainfield Zoning Ordinance Article 6.1 Planned Unit Development District ("Article 6.1") provides in relevant part:

A.      **Intent**

The Planned Unit Development (PUD) *District* is designed to: encourage creativity and innovation in the design of developments; provide for more efficient use of land including the reduction of land area disturbed for

5

utility lines and motor vehicle *Access*; permit special consideration of property with outstanding natural or topographical features; facilitate use of the most appropriate construction techniques in the development of land; and, to provide for any individual land use not otherwise specified elsewhere in this Ordinance. The PUD *District* provides flexibility in land use regulations by allowing for the consolidation of the *Subdivision* and Zone Map Change procedures as set forth below. The PUD *District* encourages imaginative uses of open space, promotes high standards in design and construction, and furthers the purposes of the *Comprehensive Plan*.

The PUD *District* is not intended for the development of residential *Subdivisions* or other developments which are provided for as a matter of right within any individual *District* of this Ordinance.

## B.      Permitted Uses and Development Requirements

1.      *Permitted Uses*.

*Primary Uses* in the PUD *District* shall be any use or range of uses specified in the PUD *District* ordinance establishing such *District* and shall be the same as those specified in the petition for Zone Map Change, either in text form or as noted in the Preliminary Plan filed with the petition for Zone Map Change. *Primary Uses*, by way of example, may include any residential, commercial or industrial land use, or any individual land use or combination of land uses deemed appropriate for the real estate.

\* \* \*

## C.  Procedure for Approval of a Planned Unit Development

1.      Overview

The complete review and approval process for a PUD consists of three (3) elements:

-       Concept Plan Design Review;

-       Zone Map Change, including a Preliminary Plan; and,

-       Secondary Review of a Final Detailed Plan.

To facilitate the use of this PUD District, <u>after completion of the Concept Plan Review, a petitioner may elect to proceed with the Zone Map Change,</u>

6

including a Preliminary Plan, approval of a Final Detailed Plan, and Primary Plat approval separately or may elect to combine any or all of those elements for joint approval. If a petitioner elects to combine any or all of those elements, all elements elected to be combined shall be docketed before the Plan Commission for a joint hearing.

If filed separately, the procedure for filing for approval of a Zone Map Change including a Preliminary Plan shall be the same as that required for any other petition for Zone Map Change before the *Plan Commission*, except as otherwise provided for in this Article. The procedure for filing for approval of a Final Detailed Plan is set forth in Article 6., D.

2.      Filing for Concept Plan Review

The petitioner shall submit a Concept Plan consisting of: (i) a written description of the proposed preliminary PUD; and, (ii) a *Sketch Plan* for the proposed development, for review by the *Staff* prior to filing a petition for Zone Map Change to the PUD *District*.

*Staff* shall review the proposed Concept Plan taking into consideration information regarding the terrain of the site and any unique natural features of the site.

* * *

Notwithstanding anything contained in this Ordinance to the contrary, neither the *Staff's* review of the proposed Concept Plan submitted for review nor *Staff's* comments to the petitioner relating thereto shall be considered a denial, approval or decision concerning the proposed Concept Plan.

3.      Filling for Zone Map Change, Including a Preliminary Plan, with the *Plan Commission*

a.      Filing Deadline – All petitions for Zone Map Change, including a Preliminary Plan, shall be filed at least forty-five (45) days prior to the initial public hearing at which they are to be considered by the *Plan Commission*.

b.      Petition – After completion of the Concept Plan Review, an application for Zone Map Change to the PUD *District*, which includes a Preliminary Plan, may be filed with the *Plan Commission*. All petitions for Zone Map Change to the PUD *District* shall contain a Preliminary Plan that satisfies the requirements as set forth below, and shall specify in either

general terms or detailed terms the *Development Requirements* that will apply to the real property that is included in the petition.

\* \* \*

e.     Preliminary Plan – A Preliminary Plan filed with the *Plan Commission* shall satisfy the following requirements:

A Preliminary Plan shall include:

(1)     A *Sketch Plan* which depicts the location of proposed land uses and maximum land use densities (i.e., *Lot Area*, *Floor Area*, ratio of *Floor Area* to *Lot Area*, identification of areas in which *Buildings* may be located, open space, *Setback Lines*, distance between *Buildings*, height of *Structures*, *Signs*, *Parking Areas*, *Loading Areas*, and landscaping);

(2)     Proposed layout of *Streets*, open space and other basic elements of the development;

(3)     Proposals for handling traffic, parking, sewage disposal, drainage, tree preservation and removal, and other pertinent development features;

(4)     The current zoning of the area proposed to be developed as well as the current zoning of the adjacent land;

(5)     A proposed breakdown of sections to be contained in the overall development along with a statement as to the order and timing of development;

(6)     All *Public* and *Private Streets* and pedestrian ways within two-hundred (200) feet of the site;

(7)     North arrow, written and graphic scale, general location map; and,

(8)     Percentage of site devoted to open space.

The Preliminary Plan, which may be a *Sketch Plan*, shall be drawn to a scale of not more than 1"=100'.

\* \* \*

4.     Determination by the *Plan Commission*.

In its determination of the appropriateness of the proposed PUD and whether to recommend approval of the Zone Map Change, including a Preliminary Plan, to the Town Council, the *Plan Commission* shall be guided by the extent to which the proposal: (a) accomplishes the intent set forth in Article 6., A., above; and, (b) provides for the protection or provision of the site features and amenities outlined in Article 6., C., 2, above.

5. Commitments, Conditions or Surety.

a. Commitments – The *Plan Commission* may require or permit the owner of a parcel of property to make written commitments concerning the use or development of the subject property in connection with the recommendation of approval of a PUD or a Final Detailed Plan Secondary Approval pursuant to Article 4.15, of this Ordinance.

* * *

**D. Secondary Review – Final Detailed Plan**

* * *

Expiration of Preliminary Plan – In the event that approval of a Final Detailed Plan is not obtained for all or a portion of the PUD within the time frames outlined above, the Preliminary Plan shall be deemed to have expired for that portion of the PUD that has not received approval of a Final Detailed Plan, except for the location and density of proposed land uses depicted on such Preliminary Plan. Once a Preliminary Plan has expired for any portion of the PUD, no development shall occur within the expired portions of the PUD until: (a) a new Preliminary Plan is approved by the *Plan Commission* at a public hearing, notice of which shall be given in the same manner as for a petition for Zone Map Change; and, (b) approval of a Final Detailed Plan as required by this Article has been obtained.

Id. at 77-83 (italics original, some emphases added).

In 2009, following a judgment and foreclosure against Metropolis' original developer and others, First Merchants bought a 25-acre parcel located on the northeast corner of Metropolis Mile and Metropolis Parkway at a sheriff's sale ("Hearthview parcel"). Brookview planned to develop a 300-unit apartment complex on the parcel to

be known as Hearthview Metropolis.  On July 27, 2012, Brookview filed with the Town of Plainfield a Development Plan for Architectural and Site Design Review requesting approval of a "PUD Preliminary Plan" and a "PUD Final Detailed Plan" to develop Hearthview Metropolis.  Id. at 140.

At a public hearing on Brookview's petition in January 2013, the Plan Commission heard evidence in support of and in opposition to the proposed development of Hearthview Metropolis.  A Department of Planning and Zoning Staff member,[1] Ms. Sprague,[2] introduced the petition and stated in relevant part as follows:

> The proposal [for Hearthview Metropolis] overall [sic] that site is zoned Metropolis PUD and is completely surrounded by the Metropolis PUD. What the petitioner is proposing tonight is to construct a 300 unit apartment complex in that location.  The property was originally zoned with a preliminary plan, as multi family, which you can see in the lower corner there.  Then the comprehensive plan also does recommend a mixed use between commercial and residential property as well.  For PUD's, it is a little bit different than what we normally do, what is required first is the preliminary plan be approved and it would establish the uses as well as the development standards.  That preliminary plan did expire and so they need to reestablish the development standards for the site.  Also for in the case of

---

[1] The Department of Planning and Zoning consists of the Plan Commission, the Board of Zoning Appeals, and Staff.  Staff members give comments to the Plan Commission in consideration of petitions such as the one at issue here.  Article 10.4 (D) of the Town of Plainfield Zoning Ordinance provides that Staff

> shall be charged with the administration of this Ordinance and, in particular, shall have the jurisdiction, authority and duties described below:
> 1.    To conduct preliminary consultations with potential applicants regarding development proposals regulated by this Ordinance.
> 2.    To review all *Improvement Location Permit* applications for compliance with the provisions of this Ordinance.
> 3.    To issue *Improvement Location Permits* upon a determination that such permit application is in full compliance with all terms and provisions of this Ordinance, the Plainfield Subdivision Control Ordinance, and all other duly adopted applicable ordinances, rules or regulations of the Town of Plainfield.

Appellants' App. at 225.

[2] The record does not reveal Ms. Sprague's first name.

Metropolis PUD, the [C]ommitments set up the requirement . . . for a special committee to be created that would review the preliminary plans. What that special committee was supposed to review was whether what they submitted was detailed enough and also if it covered the infrastructure for the proposal so whether drainage was covered, the traffic was covered, and so on.

* * *

Generally the proposed project meets the original PUD expectations for land use as well as the comprehensive plan expectations for land use. In the past the Commission has expressed concerns if residential should come first or if commercial should come first. One of the thoughts was that if the residential was there that would help support the commercial and so which way will it go, is this going to be too soon or is it actually going to help attract commercial? How does the multifamily impact the school system and the desired housing mix? Staff has not heard specifically anything from the school corporation this time. . . . All plans again comply with what the R-6 [multi-family] required, or is pretty close and DRC and staff said it is okay. . . .

Id. at 523-24 (emphases added). Timothy Ochs, representing Brookview, then began his

presentation by stating that

we want to make sure that we understand what is going on tonight and from our perspective that is development plan approval, and under the terms of the Plainfield Zoning Ordinance, that is a preliminary plan approval and a detailed Development Plan approval. This is not a rezoning. When the Metropolis PUD was initially brought in as staff pointed out, this area was designated for multifamily with the density commensurate with what is present in this project. If you look at your own zoning ordinance section 6.1 part D, it even says when a preliminary plan expires and it has to be renewed, you have to establish development requirements as staff pointed out, absolutely again, however, what is not lost [are] our uses and density and location. That is not lost here, this is not a rezoning, and the use is not an issue here from our perspective, this is about development requirements.

Id. at 524 (emphases added).

Two members of the public expressed opposition to the development of

Hearthview Metropolis. Gillian Downham, Regional Director for the Becovic

11

Management Group, owner and manager of another apartment complex located in the Metropolis PUD called Central Park Metropolis, stated that Central Park and another apartment complex in Metropolis called Canyon Club had seen dropping occupancy rates, and she suggested that Metropolis could not support another apartment complex. And Lance Angle, the general manager of the Metropolis Shopping Center, expressed his opinion that Hearthview Metropolis was not consistent with the mixed-use development that "the original developer had in mind[.]" Id. at 527.

Then Plan Commission Member Brandgard stated that the proposed Hearthview Metropolis development did not have a retail aspect to it, which was, in his opinion, "a violation of the intent of what the PUD was and what we had in it." Id. at 528. And Plan Commission Member McPhail stated that the designation of the Hearthview parcel as multi-family was only "a conceptual idea," and it was originally proposed as a multi-family complex with retail on the first floor. Id. at 529. McPhail agreed with Brandgard that the proposed complex did "not address the overall PUD" at all. Id. McPhail continued:

> You have taken your section and said, we want to do residential, and we don't know what is going to happen to the rest and we don't have any effect on that. That is unfortunate and we have a difficult situation here where we have different property owners, but we still have a PUD intact and I am [not] going to [] be able to support any project within that PUD that doesn't address the overall development of the PUD.

Id.

> Ochs then responded that

> now because of the situation we find ourselves in that as you pointed out we have separate owners, and dealing with those issues can be difficult, and I want to make sure I understand what you mean by dealing with the PUD

12

as a whole. . . . My client owns just this parcel and that is all they can deal with.

Id. at 530. Melvin Daniel, an attorney for the Plan Commission, then stated, "it is the position of the Town that the multifamily use that you are proposing tonight has never been approved." Id. at 532. At the conclusion of the hearing, the Plan Commission issued the following findings denying Brookview's petition:

1.    The Metropolis Planned Unit Development is located in Plainfield, Indiana, and was created with special legislation by the Town of Plainfield pursuant to Ordinance No. 21-2002 ("the Ordinance") sometimes referred to as Ordinance 20-2002, as amended by Ordinance No. 14-2011.

2.    Metropolis Planned Unit Development ("PUD") is subject to Commitments ("the Commitments") that create special procedures and rules that were negotiated by and agreed to by the original owner and developer of Metropolis and were incorporated into the Ordinance.

3.    The Commitments run with the land and bind the original owners of the real estate and subsequent owners.

4.    The development of the project is to occur in phases and any phase that has not completed the process of approvals by the special committee and Plan Commission within 3 years of the adoption of the Ordinance has no approval by the Plan Commission or Town, including the use for that phase.

5.    All phases not completing the review and approval requirements of the Ordinance by the year 2002, have no approval and may only be approved through the review process required by the Ordinance and Commitments.

6.    The proposed development by Brookview is not appropriate to the site and surroundings because: (1) additional renter occupied residential development would add to the existing out of balance residential housing types in Plainfield; (2) the development does not address the issues regarding the remaining undeveloped areas of the PUD; (3) the development is not consistent with the intent of the PUD; and, (4) the design of the development is not consistent with the design of the Metropolis PUD.

Id. at 536-37.

On February 8, 2013, Brookview filed its verified petition for judicial review of the Plan Commission's decision. Following a hearing on the parties' cross-motions for judgment on the administrative record, the parties submitted proposed findings and conclusions to the trial court. On November 14, the trial court entered judgment in favor of the Plan Commission, adopting its findings and conclusions. This appeal ensued.

## DISCUSSION AND DECISION

### Standard of Judicial Review

In Equicor Development, Inc. v. Westfield-Washington Township Plan Commission, 758 N.E.2d 34, 36-37 (Ind. 2001), our supreme court set out the applicable standard of review:

> Indiana Code section 4-21.5-5-14 prescribes the scope of court review of an administrative decision. That section provides that a court may provide relief only if the agency action is: (1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; (2) contrary to constitutional right, power, privilege, or immunity; (3) in excess of statutory jurisdiction, authority, or limitations, or short of statutory right; (4) without observance of procedure required by law; or (5) unsupported by substantial evidence. See also Dep't of Natural Res. v. Ind. Coal Council, Inc., 542 N.E.2d 1000, 1007 (Ind. 1989) ("[A]n administrative act is arbitrary and capricious only where it is willful and unreasonable, without consideration and in disregard of the facts and circumstances in the case, or without some basis which would lead a reasonable and honest person to the same conclusion.") Section 4-21.5-5-14(a) further provides that "[t]he burden of demonstrating the invalidity of the agency action is on the party . . . asserting invalidity." In reviewing an administrative decision, a court is not to try the facts de novo or substitute its own judgment for that of the agency. Ind. Code § 4-21.5-5-11; accord Ind. Dep't of Envtl. Mgmt. v. Conard, 614 N.E.2d 916, 919 (Ind. 1993). This statutory standard mirrors the standard long followed by this Court. See Town of Beverly Shores v. Bagnall, 590 N.E.2d 1059, 1061 (Ind. 1992).

14

On appeal, to the extent the trial court's factual findings were based on a paper record, this Court conducts its own de novo review of the record. Cf. Houser v. State, 678 N.E.2d 95, 98 (Ind. 1997) ("Because both the appellate and trial courts are reviewing the paper record submitted to the magistrate, there is no reason for appellate courts to defer to the trial court's finding that a substantial basis existed for issuing the warrant.") If the trial court holds an evidentiary hearing, this Court defers to the trial court to the extent its factual findings derive from the hearing. GKN Co. v. Magness, 744 N.E.2d 397, 401 (Ind. 2001).

Here, the trial court's findings were based on a paper record, so our review of the record is de novo. See id.

**Issue One:  Plan Commission's Authority**

Brookview first contends that the Plan Commission "exceeded its authority when it decided that the multifamily use is 'inappropriate.'" Appellants' Br. at 11. In particular, Brookview asserts that

> [t]he Plan Commission's sole function in reviewing Hearthview's petition was to consider the proposed development plans according to the prescribed development standards for multifamily housing. Nevertheless, the Plan Commission denied approval of Hearthview's development plans based on its opinion that there is too much multifamily housing in Plainfield rather than on the prescribed criteria. Multifamily residential housing is an approved use under the PUD for the proposed location, and the Plan Commission does not have the power to change that.

Id. at 11-12 (emphasis added). In support of that contention, Brookview points out that the power to zone the Hearthview parcel lies within the exclusive jurisdiction of the Plainfield Town Council. See Ind. Code § 36-7-4-1507. And Brookview states that, while the Plan Commission serves an advisory role in the creation of zoning districts, it does not have the power to create zoning districts or to rezone land once the Town Council has created zoning districts. See Brown Cnty. Ind. v. Booe, 789 N.E.2d 1, 12 (Ind. Ct. App. 2003) (citing City of Anderson v. Irving Materials, Inc., 530 N.E.2d 730,

15

733 (Ind. 1988)), <u>trans. denied</u>.

But we agree with the Plan Commission that the issue presented is not whether the Hearthview parcel was zoned multifamily. The Hearthview parcel and the Metropolis development as a whole are zoned PUD, and the zoning ordinance that created the PUD did not establish a land use for the Hearthview parcel. Brookview does not dispute the Plan Commission's contention that approval of a preliminary plan is required to establish a use for the Hearthview parcel. And the Plan Commission contends, and the evidence shows, that no preliminary plan was ever approved for the Hearthview parcel. Thus, the Hearthview parcel has no designated land use.

In particular, the first Commitment included in the Ordinance includes a disclaimer that the plans submitted with the PUD do not constitute a preliminary plan. The first Commitment states:

> 1.    Owner/Petitioner acknowledges that the plans submitted in connection with PUD-02-003 constitute a "concept plan" and <u>do not meet the standards of a "preliminary plan" as specified in Article 6 of the Plainfield Zoning Ordinance</u>. Therefore, Owner/Petitioner agrees to provide all of the elements of a preliminary plan in the review process described in Exhibit 1.

Appellants' App. at 39 (emphasis added). And there is no documentary evidence in the record that a preliminary plan for the Hearthview parcel was ever submitted, let alone approved. In addition to the Commitments, Plan Commission Member McPhail stated at the hearing on Brookview's petition that only a concept plan had been submitted for the Hearthview parcel. Brookview's contention that the Plan Commission approved a preliminary plan designating the land use as multifamily is incorrect.

Still, Brookview maintains that there is no significant difference between a

16

concept plan and a preliminary plan. In particular, Brookview points out that the PUD ordinance provides that both concept plans and preliminary plans must include a "sketch plan." See id. at 146, 149. And the PUD ordinance also states that a preliminary plan "may be a sketch plan[.]" Id. at 149. Thus, Brookview maintains that the "issue was not whether what was previously submitted met all the criteria for a 'preliminary plan.' The only issue was whether the proposed uses were depicted on the plan, and the undisputed testimony of Staff was that the location at issue was depicted and approved for multifamily housing." Appellants' Br. at 15.

We decline Brookview's invitation to ignore the distinction between a concept plan and a preliminary plan. They are not equivalent. The Commitments are explicit that no preliminary plan was submitted, and Article 6.1 clearly differentiates between a concept plan and a preliminary plan. For instance, Subsection C(3)(b) provides: "After completion of the Concept Plan Review, an application for Zone Map Change to the PUD District, which includes a Preliminary Plan, may be filed with the Plan Commission." Here, again, the evidence shows only that a concept plan with proposed land uses had been submitted.

The only support for Brookview's contention that the Hearthview parcel was designated multifamily with approval of a preliminary plan is found in the introductory statement of a staff member at the public hearing on January 10, 2013. That staff member, Ms. Sprague, introduced Brookview's petition at that hearing and stated in relevant part as follows:

> The proposal [for Hearthview Metropolis] overall, that site is zoned Metropolis PUD and is completely surrounded by the Metropolis PUD.

17

What the petitioner is proposing tonight is to construct a 300 unit apartment complex in that location. The property was originally zoned with a preliminary plan, as multi family, which you can see in the lower corner there. Then the comprehensive plan also does recommend a mixed use between commercial and residential property as well. For PUD's, it is a little bit different than what we normally do, what is required first is the preliminary plan be approved and it would establish the uses as well as the development standards. That preliminary plan did expire and so they need to reestablish the development standards for the site.

Appellants' App. at 523 (emphases added).

Plan Commission Member McPhail disputed Sprague's description of the plan as a preliminary plan and stated that it was only a concept plan.[3] Moreover, we note that Brookview does not direct us to anything in the record that would correlate with Sprague's reference to "the lower corner" of a document presented at the hearing. Id. If a preliminary plan had been approved and Sprague had identified a map or document indicating that approval, that might resolve the issue. Instead, Brookview contends only that we should rely on Sprague's statement, without more, as proof of the designated land use under a preliminary plan.[4]

---

[3] We reject Brookview's contention that, while the staff member's comments are evidence, Member McPhail's remarks cannot be considered in our review. Citing our supreme court's opinion in Derloshon v. City of Fort Wayne on Behalf of Department of Redevelopment, 250 Ind. 163, 234 N.E.2d 269, 273 (1968), Brookview asserts that it is "well-settled that an administrative body cannot rely on its own information for support of its findings." But Brookview mischaracterizes the rule stated in Derloshon, which provides that an administrative body cannot rely on its own information to support its findings, but must base its findings "'on evidence produced in the hearing at which an opportunity is given to all interested parties to offer evidence and cross-examine witnesses.'" 234 N.E.2d 269, 273 (citation omitted). Here, Brookview makes no contention that it was denied an opportunity to present evidence that a preliminary plan had been approved or was otherwise denied a fair hearing. Thus, its reliance on Derloshon is misplaced.

[4] To the extent Brookview contends that the Staff member was making reference to a "zone map," Brookview does not direct us to any part of the record purporting to be the zone map at issue. See Appellants' Br. at 19-20 ("Here, interpretation of zone maps and administration of the zoning ordinance was specifically within the duties, responsibilities, and knowledge of Staff[.]") And our review of the record reveals only a "Future Land Use Map" submitted as part of the Town of Plainfield's "2025 Comprehensive Plan Supplement #1." See Appellants' App. at 226-28. Brookview makes no contention

Again, our review of this issue is de novo.  Equicor Development, 758 N.E.2d at 36-37.  Each of Brookview's arguments on the issue of whether the Hearthview parcel is designated multifamily is based on the premise and contingent on a determination that a preliminary plan had been approved.  We hold that the evidence and reasonable inferences therefrom show that no preliminary plan was approved for the Hearthview parcel, and without a preliminary plan, there was no designated land use for that parcel.  The trial court did not err when it concluded that the Plan Commission had the authority to reject the proposed multifamily use for the Hearthview parcel.

Finally, we address Brookview's contention that the Plan Commission has exceeded its authority by "determin[ing land] use in a PUD on a case-by-case basis."  Appellants' Br. at 20.  In support of that contention, Brookview cites to this court's opinion in T.W. Thom Construction, 721 N.E.2d at 327, where we stated:

> [T]he operation and effect of [] zoning ordinances must be clear from reading the text.  It is well-settled that zoning ordinances must be precise, definite and certain in expression so as to enable both the landowner and municipality to act with assurance and authority regarding local land use decisions.  This requirement is dictated by due process considerations in that the ordinance must provide fair warning as to what the governing body will consider in making a decision.
>
> Under our Home Rule statute, a municipality may elect not to exercise its power over local land use decisions.  See Ind. Code § 36-1-3-5.  But the City cannot, by an unwritten policy, custom and practice, relinquish its zoning authority over mobile home parks in violation of its own ordinance.  A zoning ordinance cannot be administered ad hoc, or without authority, but must be administered according to its terms.

(Citations omitted).

But, again, here, the Ordinance was approved after the original owner of the parcel

that that map was a "zone map" or otherwise shows that a preliminary plan was approved designating the Hearthview parcel as multifamily.

19

agreed to the Commitments, which created a review and approval process that deviates from the standard PUD approval process and gives the Plan Commission authority to review proposed land uses before approving a preliminary plan. The operation and effect of the Ordinance is clear from reading the text. And all subsequent owners, including Brookview, are bound by the Commitments. Brookview stands in the shoes of the original developer and its interest is subject to the Commitments of the original developer, which are recorded and run with the land. As Plan Commission Member McPhail acknowledged at the December 2013 hearing, it is "unfortunate" that the original owner defaulted and the original development concepts devised by the original developer and the Plan Commission have not panned out. Appellants' App. at 529. The Metropolis PUD contemplated that development of the entire tract would be controlled by a single owner. The phase-by-phase approval process is made more "difficult" given the number of "different property owners" involved now, but the terms of the Ordinance remain in force. See id.

## Issue Two: Findings

Brookview next contends that the Plan Commission's findings are inadequate. In particular, Brookview maintains that Finding 6 is "a general statement that merely tracks the language of the ordinance [and] is insufficient as a matter of law to support a denial." Appellants' Br. at 23. And Brookview asserts that the subfindings in Finding 6 are an "attempt[] to bolster" the general statement in Finding 6 and are "impermissibly general[.]" Id. at 24. Brookview concludes that

> each of the findings is legally insufficient because it either has no basis in
> the ordinance and/or support in the evidence. All the evidence at the

20

hearing was favorable to approval of the project, except for two remonstrators whose complaints were wholly outside the scope of what the Plan Commission was allowed to consider. Several of the Commissioners themselves were complimentary of the plans. The findings are not sufficient and cannot support the Plan Commission's decision.

Id.

Indiana Code Section 36-7-4-1406(a) provides that a plan commission shall make written findings concerning each decision to approve or disapprove a development plan. Written findings are necessary to insure adequate judicial review of administrative decisions. The Kroger Co. v. Plan Comm'n of the Town of Plainfield, 953 N.E.2d 536, 543 (Ind. Ct. App. 2011), trans. denied. Each of the specific and concrete reasons for the denial should be stated in the findings and should not be raised in a piecemeal fashion so that the petitioner may attempt to amend its plan to comply with the ordinance. Id. The findings are insufficient to support the commission's ultimate findings if they are merely a general replication of the requirements of the ordinance at issue. Id.

Here, again, the Plan Commission found as follows:

1. The Metropolis Planned Unit Development is located in Plainfield, Indiana, and was created with special legislation by the Town of Plainfield pursuant to Ordinance No. 21-2002 ("the Ordinance") sometimes referred to as Ordinance 20-2002, as amended by Ordinance No. 14-2011.

2. Metropolis Planned Unit Development ("PUD") is subject to Commitments ("the Commitments") that create special procedures and rules that were negotiated by and agreed to by the original owner and developer of Metropolis and were incorporated into the Ordinance.

3. The Commitments run with the land and bind the original owners of the real estate and subsequent owners.

4. The development of the project is to occur in phases and any phase that has not completed the process of approvals by the special committee and Plan Commission within 3 years of the adoption of the Ordinance has

21

no approval by the Plan Commission or Town, including the use for that phase.

5.      All phases not completing the review and approval requirements of the Ordinance by the year 2002, have no approval and may only be approved through the review process required by the Ordinance and Commitments.

6.      The proposed development by Brookview is not appropriate to the site and surroundings because:  (1) additional renter occupied residential development would add to the existing out of balance residential housing types in Plainfield; (2) the development does not address the issues regarding the remaining undeveloped areas of the PUD; (3) the development is not consistent with the intent of the PUD; and, (4) the design of the development is not consistent with the design of the Metropolis PUD.

Appellants' App. at 536-37.

### Finding 6

Brookview first contends that Finding 6 is insufficient to support the Plan Commission's ultimate findings because it is "merely a general replication of the requirements of the ordinance at issue."  See Kroger, 953 N.E.2d at 543.  We note, however, that each finding does not stand alone, and we construe a plan commission's findings as a whole to determine whether they provide fair notice to a petitioner of the reasons for a denial.  See, e.g., Van Vactor Farms, Inc. v. Marshall Cnty. Plan Com'n, 793 N.E.2d 1136, 1146 (Ind. Ct. App. 2003), trans. denied.  Indeed, the Plan Commission supported its general finding that the proposed development is not appropriate to the site and surroundings with four subfindings.  And the findings as a whole provide fair notice to Brookview of the reasons for the Plan Commission's decision.   Brookview's contention on this issue is not well-taken.

22

Brookview contends that subfinding 6(1) "has no authority in the [Plainfield zoning] ordinance and is without evidentiary support." Appellants' Br. at 24. In particular, Brookview maintains that: the subfinding does not consider whether the proposed complex "is appropriate to the site or the surroundings"; multifamily use has already been approved for the property, so the Plan Commission does not have the authority to "rezone" the property; "nothing in the zoning ordinance or PUD allows the Plan Commission to consider the balance of housing types in Plainfield in reviewing development plans" and there was no evidence that the Hearthview Metropolis would put the percentage of rental housing out of balance; and the "only evidence before the Plan Commission was that 'the proposed project meets the original PUD expectations for land use as well as the comprehensive plan'" (quoting Sprague). Id. at 24-25.

First, because multifamily use was not a designated land use for the Hearthview parcel, Brookview's contentions on this issue, which are contingent on that designation, must fail. Second, Brookview does not cite any statutory authority or case law to support its assertion that the Plan Commission was not permitted to consider the "balance of housing types" in Plainfield in reviewing the development plan. Brookview merely states that "nothing in the zoning ordinance or PUD" permits that consideration. Appellants' Br. at 25.

But Indiana Code Section 36-7-4-1403 provides in relevant part that in reviewing a development plan the Plan Commission may consider the compatibility of the development with surrounding land uses and "[o]ther requirements considered

appropriate by the legislative body." And from the inception of the PUD, the Plan Commission expressed concern about "out of balance residential housing types in Plainfield." Appellants' App. at 536. During the December 2, 2002, public hearing on the petition for the PUD rezoning, the Director of Planning for the Town of Plainfield stated as follows:

> However, you know that there is quite a bit of multi-family already in Plainfield and you also know that we have recently added to that with some developments that were approved in Saratoga and elsewhere. So, that is an issue to consider is the amount of multi-family development that we would have and the type of multi-family development that we would end up with.

Id. at 328. Finally, the Plan Commission heard from a remonstrator at the December 2013 hearing that existing apartment complexes in the area were seeing increased vacancy rates and that the addition of the Hearthview Metropolis was a "very serious concern" for the existing complexes. Id. at 527. Brookview's contention that there is neither authority under the zoning ordinance nor a factual basis in the record for the finding is without merit.

### Subfinding 6(2)

Brookview next contends that "[n]owhere does the zoning ordinance or PUD ordinance allow the Plan Commission to consider whether 'the development addresses the issues regarding the remaining undeveloped areas of the PUD' when considering whether to approve development plans." Id. at 25-26. Brookview acknowledges that the entire PUD originally had one owner and now has many different owners. But Brookview points out that "the Town Council specified no requirement . . . that independent owners account for the status of development elsewhere in the PUD. The

24

Plan Commission cannot require that an owner develop property that it does not own." Id. at 26.

But, as a Plan Commission member stated at the hearing, the original concept plan indicated that the parcel would be a mix of retail and multifamily. And, as the Plan Commission members discussed during the December 2013 hearing, the PUD requires a "cohesive development," and Plan Commission Member Brandgard suggested that Brookview consult with owners of adjacent parcels "to keep it somewhat together of what it was supposed to be originally." Appellants' App. at 530. Regardless, the record is replete with evidence that the PUD was designed to be a mixed-use development, and a concern has persisted that the residential component should be balanced with the commercial component. Because Brookview's proposed development does not consider that balance but treats Hearthview Metropolis as if it were a freestanding parcel and not part of a PUD, we cannot say that the Plan Commission's finding on this issue is unfounded.

### Subfinding 6(3)

Brookview contends that this subfinding "is not a legitimate basis for denying the petition, nor is there evidence in the record to support it." Id. at 27. And Brookview asserts that in Kroger, this court held that this finding is insufficient as a matter of law. Brookview also states, again, that the only evidence before the Plan Commission was that the "development was consistent with the intent of the PUD and the comprehensive plan." Id.

In Kroger, we held that the Plan Commission's three findings, including the finding that "the proposed development is not consistent with the intent and purpose of the Plainfield Zoning Ordinance," were insufficient because they were "merely a general replication of a few of the considerations set forth in the Plainfield Zoning Ordinance." 953 N.E.2d at 544. And we stated that the findings did not "provide sufficient specificity to inform Kroger why its proposed development of a gas station was not appropriate to the site and its surroundings or consistent with the intent and purposes of the Plainfield Zoning Ordinance." Id. Here, while subfinding 6(3) may be insufficient on its own, the findings, as a whole, are sufficiently specific to inform Brookview why its proposed development was inappropriate for the PUD. And the evidence clearly supports the finding in that the proposed development does not take into consideration the intent of the PUD to encourage mixed use development. As Plan Commission Member Brandgard stated at the hearing, "Bringing in a residential part that does nothing, and is not a part of increased retail part [sic], is in my mind a violation of the intent of what the PUD was and what we had in it." Appellants' App. at 528.

## Subfinding 6(4)

Finally, Brookview contends broadly that "There is simply no evidentiary basis to conclude that the design in Hearthview's development plans is not consistent with the PUD." Appellants' Br. at 29. Brookview maintains that: multifamily housing is an approved use for the parcel; under Plainfield's zoning ordinance, "site appropriateness" for a particular design is already established for a multifamily housing project once the development plans pass the ordinance's rigorous development and architectural and site

26

design standards and review process; and "the Plan Commission again failed to provide any specificity as to how the design of Hearthview Metropolis is deficient, and the evidence does not support such [a] finding." Id. at 28-29.

But, once again, each of Brookview's contentions on this issue is contingent on the assumption that multifamily was an approved use for the Hearthview parcel, which is not the case. One of the remonstrators testified that, "just from the elevations that I saw, [the proposed Hearthview Metropolis] looks completely different than what the shopping center does." Appellants' App. at 527. In other words, there was evidence presented that the proposed design of Hearthview Metropolis was not consistent with the overall PUD.

We agree with the Plan Commission that its findings are supported by substantial evidence, including: discussion of the renter versus owner housing mix being out of balance and the threat additional renter-occupied housing presented to the school corporation in the form of increased student turnover and lower quality education; discussion that the complex did not take into account the undeveloped property within and the cohesion of Metropolis; testimony that the intent of the PUD was for commercial development to drive residential development and that bringing in a residential development that did not promote commercial development violated the intent of the PUD; and testimony and discussion that the architectural features and elevations of the proposed complex differed from those of the existing shopping center. We hold that the Plan Commission's findings are sufficiently specific.

### Issue Three: Due Process

Brookview contends that

[t]he Plan Commission's wrongful denial of the Proposed Development Plan, on the purported basis that it did not describe an approved use under the Metropolis PUD was without any legitimate basis and beyond the Plan Commission's discretion under the standards established by Indiana law and the Plainfield Zoning Ordinance. The Plan Commission's actions were arbitrary and capricious and without any rational basis. As a result, [Brookview]'s substantive due process rights were violated.

Appellants' Br. at 31.

In Equicor, our supreme court stated:

An inquiry into the motive of an agency action may be proper in some circumstances, notably where there is a claimed violation of rights protected by the Fourteenth Amendment. Thus, in the context of a zoning administrative action, "[a] violation of substantive due process rights is demonstrated if the government's actions were not rationally related to a legitimate state interest or were motivated by bias, bad faith, or improper motive." John E. Long, Inc. v. Borough of Ringwood, 61 F.Supp.2d 273, 280 (D.N.J. 1998). "[A] plaintiff must show that the state administrative agency has been guilty of 'arbitrary and capricious action' in the strict sense, meaning 'that there is no rational basis for the . . . [administrative] decision.'" Brody v. City of Mason, 250 F.3d 432, 438 (6th Cir. 2001) (holding city's grant of permit to operate business in residential neighborhood not arbitrary and capricious); accord Greenbriar, Ltd. v. City of Alabaster, 881 F.2d 1570, 1577 (11th Cir. 1989). An improper motive may also be demonstrated by evidence of extreme partisan political considerations, personal conflicts of interest and gain, or invidious discriminatory intent. Long, 61 F.Supp.2d at 283.

758 N.E.2d at 37.

Here, because the evidence supports the Plan Commission's determination that multifamily was not an approved use for the Hearthview parcel, and because the evidence, overall, supports the Plan Commission's decision to deny Brookview's petition, Brookview has not shown that the Plan Commission's actions were arbitrary and capricious and without any rational basis. Accordingly, Brookview's contention that it was denied due process is without merit.

28

**Issue Four: Taking**

Brookview contends that the Plan Commission's decision constitutes an uncompensated taking in violation of the United States and Indiana constitutions. While property may be regulated to a certain extent, if regulation goes too far it will be recognized as a taking. Bd. of Zoning Appeals v. Leisz, 702 N.E.2d 1026, 1028 (Ind. 1998). Here, Brookview maintains that it "purchased the subject property with the knowledge and expectation that a multifamily use was approved under the original preliminary plan." Appellants' Br. at 32. Thus, Brookview asserts, the Plan Commission's de facto "zoning" decision to remove multifamily as an approved use was an impermissible taking without just compensation. Brookview also contends that its proposed development was "singled out" for less favorable treatment than other parcels in the PUD, which constitutes "reverse spot zoning" and an unconstitutional regulatory taking. Id. at 33 (citing Penn Cent. Transp. Co. v. New York City, 438 U.S. 104, 132 (U.S. 1978)).

First, we reject Brookview's contention that it "purchased the subject property with the knowledge and expectation that a multifamily use was approved under the original preliminary plan." Appellants' Br. at 32. Because no preliminary plan had been approved designating a use for the parcel when Brookview purchased it, Brookview could not have had any expectation concerning a designated land use. And second, Brookview does not direct us to any evidence in the record to support its assertion that it was treated differently than owners of other parcels in the PUD. Accordingly, we reject

29

Brookview's contention that the Plan Commission's decision constitutes an uncompensated taking in violation of the United States and Indiana constitutions.

**Conclusion**

Brookview purchased the Hearthview parcel with knowledge that the original owner and developer had agreed with the Town of Plainfield to "rezone Metropolis as [a] PUD without approved land uses so that the Town and the Developer could work together, through the Metropolis Development Process, to establish use and development requirements for Metropolis." Appellee's Br. at 20-21. The first Commitment of the original developer set out in the Metropolis PUD clearly states that no preliminary plan and, hence, no land use had been approved for the Hearthview parcel. Because no preliminary plan had been approved for the Hearthview parcel, Brookview has not shown that the Plan Commission's denial of its petition for development plan approval was arbitrary or capricious. And, finally, the Plan Commission's decision does not constitute a taking. The trial court did not err when it granted the Plan Commission's cross-motion for judgment on the administrative record and affirmed the Plan Commission's denial of Brookview's development plan.

Affirmed.

VAIDIK, C.J., and BROWN, J., concur.